### Joseph Kuhn, et al. v. Illinois Central Railroad Co.

1. PUBLIC NUISANCE—*definition of.* A public nuisance is one which affects the public, generally, and such a nuisance may be proceeded against by indictment, and, likewise, confers a right of action to an individual suffering special damage thereby.

2. SPECIAL DAMAGE—*nature of, required to confer an individual right of action.* The special damage which an individual suffers by reason of a public nuisance which confers upon him a right of action, may be either direct or consequential.

3. EMINENT DOMAIN—*when acquisition of property under the power of, does not defeat an action for injury to real property.* Where real property was acquired by a railroad company through the exercise of the power of eminent domain, or by purchase without the exercise of such right, under the constitution of 1848, which did not allow damages for property not actually taken, such railroad company could not, after the adoption of the constitution of 1870, plead such acquisition and thereby defeat a recovery in an action brought by the same owner for damage to adjoining property resulting from the construction, maintenance and operation of its railroad in a manner specially to damage the

same, where such special damage arose after the adoption of the constitution of 1870. (So held by way of dicta.)

4. PERSONAL PROPERTY—*when injury to, is actionable.* The owner of personal property injured by reason of a railroad company negligently allowing smoke, etc., to escape from its premises, may successfully maintain an action against such company.

5. STATUTE OF LIMITATIONS—*when, begins to run.* Where personal property is injured by reason of a railroad company negligently allowing smoke, etc., to escape from its premises, a right of action immediately arises, and each successive injury gives rise to a separate right of action.

6. ADMISSION—*what evidence is incompetent by way of an.* In an action brought against a railroad company for injury resulting to personal property by reason of its negligently allowing smoke. etc., to escape from its premises, it is incompetent for the purpose of establishing an admission to show that after the commencement of the action the stacks which caused the injury were raised, but such evidence is competent as tending to prove that the lowness of the stacks caused the injury complained of.

7. COLLATERAL EVIDENCE—*when incompetent.* In an action brought against a railroad company for injury resulting to personal property by reason of its negligently allowing smoke, etc., to escape from its premises, it is incompetent to show that persons other than the plaintiff were annoyed from a like cause.

8. CROSS-ERROR—*when, essential to raise question of law.* Where a demurrer has been sustained to a plea filed by the party successful in the trial court, no question can be raised by such party on appeal, where he has assigned no cross-error upon such ruling.

Action on the case against a railroad company to recover damages to personal property for allowing smoke, etc., to escape from its premises. Appeal from the Circuit Court of Champaign County; the Hon. SOLON PHILBRICK, Judge, presiding. Heard in this court at the May term, 1903. Reversed and remanded. Opinion filed November 9, 1903.

RAY & DOBBINS and W. B. RILEY, for appellant.

J. S. WOLFE, for appellee; J. G. DRENNAN, of counsel.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

This is an action on the case by appellants against appellee, to recover damages for allowing smoke, gas, soot, cinders, etc., to escape from the roundhouse of appellee so as to damage the merchandise of appellants. At the close of all the evidence, the court directed a verdict in favor of the

defendant.   After a motion for a new trial was overruled, the court rendered judgment against the plaintiffs in bar of the action and for costs.   The plaintiffs bring the case to this court by appeal.

The declaration alleges that the plaintiffs were possessed of a store building in the city of Champaign, in which they were conducting a retail clothing business; that the defendant owned and occupied adjoining premises for a roundhouse in which locomotive engines were housed, cleaned and fired; that it was the duty of the defendant to so use its premises and property as not to negligently injure the property of the plaintiffs; yet the defendant, not regarding its duty in that behalf, carelessly, recklessly and negligently carried on its said business during a large part of said time and permitted its roundhouse to be in poor condition of repair and permitted a large number of smokestacks then and there being upon said roundhouse to be unnecessarily and negligently short and low, broken down and out of repair, and the tops thereof lower than the buildings surrounding the said roundhouse, and did carelessly and unnecessarily use in and about said roundhouse, filthy and evil-smelling mineral and animal oils and grease, and unreasonably cheap grades of fuel, well knowing that said roundhouse was immediately adjoining the heart of the business portion of the city of Champaign, then and there a city of eight thousand people, and that the store of plaintiffs and a large number of other business houses and offices were immediately adjoining the same   *   *   *   all of which said actions on the part of defendant were not necessary in or to the usual and ordinary conduct of its said business, and by means of which it did thereby cause unnecessarily large quantities of dense, heavy, sickening smoke, unusually and unnecessarily laden with soot, steam, vile suffocating gases, nauseating odors, coal dust and grime to be cast upon the premises of plaintiffs, and rotting, staining and discoloring and otherwise injuring their said merchandise, furniture and furnishings by the awful deposit thereon, which said injury would not have been caused to the plaintiffs by the necessary, usual

and ordinary use of the premises aforesaid, and by means
whereof the personal property of the plaintiffs has been
injured to the amount of, to-wit, five thousand dollars, and
whereby plaintiffs have been compelled to spend large sums
of money in trying to prevent and remove said dirt, dust,
soot and grime, and been otherwise damaged in the sum of,
to-wit, five thousand dollars.

To the declaration, the defendant pleaded not guilty,
statute of limitations, and prescriptive right. To the lat-
ter plea, the court sustained a demurrer. Issue was joined
on the remaining pleas.

The evidence tends to show that the defendant, in 1853,
purchased eighty acres of land in what is now the business
center of the city of Champaign; that it platted the major
part of the land into blocks and lots and sold them to vari-
ous parties; that later it subdivided a portion of the residue
of said land into a row of lots, 24 x 120 feet, leading to its
passenger station and facing on Main street; that lot nine
of this last subdivision was conveyed by warranty deed to
Joseph Kuhn, one of the plaintiffs; that he, or he and his
son have conducted a clothing business on said lot for the
past twenty-five years; that the fee to said lot is in said
Joseph Kuhn, and that the plaintiffs are tenants of the
premises; that the store building on said lot is two stories
high; that in the rear of said store the defendant constructed
and maintained the roundhouse in question; that on top of
the roundhouse, which was one story in height, were twenty-
seven smokestacks and ventilators, constructed of cast iron;
that only one of them was more than half as high at the
top as plaintiffs' and other adjoining buildings; that the one
stack extended higher than the surrounding buildings; that
some of the stacks corroded and decayed till they did not
extend above the roof of the roundhouse; that in 1898, de-
fendant commenced and thereafter continued the use of oil
in firing its engines in the roundhouse, with the result that
volumes of smoke, greasy soot, gases, etc., entered plaint-
iffs' store and damaged their stock of goods.

The evidence also tended to show that it was practicable

to construct the smokestacks and ventilators at such a height as would relieve the plaintiffs of all the injuries complained of in their declaration, and that such construction would not impair the use of the roundhouse to the defendant.

Wood on Nuisances, under subject of "Legalized Nuisances," says :

"When a railroad company can exercise its rights in a way that will not be productive of injury to private rights, it is bound to so exercise it.   *   *   *   If there are two modes in which the work can be done, one of which would create a nuisance, and the other not, they are bound to choose the method which will obviate the nuisance."

In deciding a case similar to the one under consideration, the United States Supreme Court, in B. & P. R. R. Co. v. Fifth Baptist Church, 108 U. S. 334, 27 Law Ed. 745, said:

"If, as asserted, the noise, smoke and odors which are the cause of the discomfort and annoyance to the plaintiff, are no more than must necessarily arise from the nature of the business carried on with an engine house and workshop, as ordinarily constructed, then the engine house and workshop should be so remodeled and changed in their structure as to prevent, if that be possible, the nuisance complained of.   *   *   *   The fact that the stacks of the engine house were as high as the city regulations for chimneys required, is no answer to the action if the stacks were too low to keep the smoke out of the plaintiff's church.   In requiring that chimneys should have a certain height, the regulations do not prohibit their being made higher, nor could they release from liability if not made high enough.   It is an actionable nuisance to build one's chimneys so low as to cause the smoke to enter his neighbor's house."

Wood on Nuisances, Vol. 1, Sec. 498, lays down the rule to be, that one has no right to develop dense masses of smoke to the injury of his neighbor nor to build his chimneys so as to send the smoke into his neighbor's house. If his neighbor's house is high and his own is low, this does not absolve him from raising his chimneys to such a height as to prevent the smoke from entering his neighbor's house.   The New York Court of Appeals, in Coggswell v. N. Y., N. H. & H. Ry. Co., 103 N. Y. 10, 8 N. E. 538, held, where smokestacks from a roundhouse extended

only to adjoining owners' third-story windows, " that the engine house as used, was, within every definition, a nuisance."

" Undoubtedly the general rule is, that public or common nuisances, which are defined by Blackstone to. be those ' which affect the public and are an annoyance to all the king's subjects,' can only be proceeded against by indictment, but it is also a well-established rule, that, where a person sustains, by reason of a public nuisance, a special damage different from that which is common to all, he is not precluded from maintaining his action for such damage. (Wood's Law of Nuisances, Secs. 618 and 653.) The doctrine, that special damage must be shown in order to justify a private action for injury growing out of a public nuisance, had its origin in the consideration of nuisances growing out of obstructions to highways and navigable streams. For instance, if a man dug a ditch across a public highway, the traveler would have no action for the inconvenience which he suffered from the interruption in common with the rest of the public, but, if his horse fell into the ditch and was killed, he would thereby suffer a special damage not common to others. The strictness of the original rule has been greatly modified since the days of Lord Coke. Recovery may be had for damages which are consequential as well as direct. (Wood's Law of Nuisances, Secs. 620 and 621.) An individual, who receives actual damage from a nuisance, may maintain a private suit for his own injury, although there may be many others in the same situation. (Lansing v. Smith, 4 Wend. 10.) The doctrine now is, that a nuisance may be at the same time both public and private. The use of a steam engine in a crowded street may be a public nuisance, but, in a case where the smoke from it also injured the goods in a man's shop and made his dwelling uncomfortable, it was held to be such a private nuisance as would give him a right of action." Wylie v. Elwood, 134 Ill. 286.

But it is contended by appellee, that when it acquired the property in question for railroad uses in 1853, it then

settled for all damages arising from its use for such purposes. But appellee is making its contention upon the theory that this is a suit brought to recover damages to real estate resulting from the construction, maintenance and operation of its railroad. If it were, it would not be protected by the mere acquisition of the property because it was acquired under the constitution of 1848, which did not allow compensation for resulting damages to property not actually taken. Moreover, under the constitution of 1870, which allows compensation for damages to property not actually taken, appellee would be presumed only to have paid compensation for such damages as resulted from the lawful use of its property for railroad purposes; but this is an action on the case for injury to personal property brought by those who are tenants only of the realty.

It is also contended by appellee that the judgment should be affirmed because the alleged cause of action was barred by the statute of limitations. The contention is without merit. Each injury inflicted by appellee upon appellants was a new cause of action, and the cause of action, if any, arising within five years prior to the commencement of the suit, would not be barred. I., I. & I. Ry. Co. v. Patchette, 59 Ill. App. 252; C. & A. Ry. Co. v. Willi, 53 Ill. App. 606; North Shore St. Ry. Co. v. Payne, 192 Ill. 247.

We are of the opinion that the evidence fairly tended to prove a case under the declaration and that it should have been submitted to the jury.

Appellee's contention, that the record fails to show a timely exception to the action of the court in denying the motion for a new trial, is untenable. Bromley v. The People, 150 Ill. 297.

We hold that the evidence offered, to the effect that the smokestacks were raised after suit was brought and that the nuisance was thereby largely, if not entirely, abated, though incompetent as an admission of negligence, was competent as tending to show that the lowness of the stacks caused the damage complained of in the declaration. We also hold that the testimony of Dr. Johnson that he was

also annoyed by the smoke, was incompetent and properly excluded.

Considerable attention and time have been devoted by counsel in their briefs to the question of prescriptive rights. When the court sustained a demurrer to appellee's plea setting up that defense, the question was out of the case so far as the trial court was concerned. Appellee not having assigned cross-error upon the ruling sustaining the demurrer, the question is not before this court.

For the reason that the court refused to submit the case to the jury, the judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*