(No. 37972.—

Floyd A. Swanson, Appellee, *vs.* George W. Randall *et al.*—(Rock River Savings and Loan Association, Appellant.)

*Opinion filed January 22, 1964.*

Guyer and Enichen, of Rockford, for appellant.

Thomas, Davis and Kostantacos, of Rockford, (Charles S. Thomas, of counsel,) for appellee.

- . Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

The plaintiff, Floyd A. Swanson, brought this action against George W. and Dolores D. Randall, the Rock River Savings and Loan Association, and other defendants seeking to impress a constructive trust upon certain real estate; to set aside a first mortgage to Rock River Savings and Loan Association and a second mortgage to H. Shore & Associates, Inc., and praying for a reconveyance of the property from the Randalls to plaintiff. A petition for change of venue filed by Rock River Savings and Loan Association was denied, and, after hearing, the trial court ordered the real estate reconveyed to plaintiff, set aside the second mortgage of H. Shore & Associates, Inc., and set aside the mortgage of Rock River Savings and Loan Association as to any amount in excess of $5,936.63. Rock River Savings and Loan Association alone appeals from the denial of its petition for a change of venue and from the decree.

Prior to 1949 the plaintiff, Swanson, owned the real estate in question, which was mortgaged to First Federal Savings and Loan Association of Rockford. First Federal foreclosed its mortgage and the period of redemption was about to expire in October, 1950, when Swanson discussed his predicament with his neighbor Randall. Apparently Swanson's credit was insufficient to enable him to borrow the amount necessary to redeem the premises, and Randall offered his assistance. On October 13, 1950, as a result of their conversations, Swanson conveyed the real estate to the Randalls who immediately mortgaged the property for $6,000 and thereafter used the funds for the purposes of redemption from the foreclosure sale.

At the time of the conveyance Swanson and the Randalls executed a written agreement, whereby it was agreed that the Randalls would first obtain a $6,000 mortgage for the purpose of redemption, and then refinance the property by a $9,600 F.H.A. loan. Out of the proceeds of the final

loan, the initial loan, interest, costs and expenses were to be first paid. Then Randall was to receive $1,250 for his services, repairs were to be made, a deposit for monthly payments retained, and the surplus was to be paid to Swanson. The agreement further provided as follows:

"6. First parties [Randall] further agree that while they hold the title to said real estate, they are merely holding the same to protect themselves from personal liability under the note and mortgage executed by them as aforesaid, and that their retention of title is for the ultimate use and benefit of second party.

"7. Second party [Swanson] agrees that first party shall have the full right and authority to deal with said real estate in every manner as if it were their own absolutely, and in no case shall any person dealing with first party, or dealing with any grantees, mortgagee or lessee of first party with reference to said premises, be obliged to see to the application of the purchase, mortgage, or rent money, or to see that the terms of this agreement have been complied with, or to inquire into the necessity or expediency of any act of first party, and the execution of any deed, mortgage, trust deed, leases or other instruments by first party shall be conclusive evidence in favor of the grantee, mortgagee, lessee, or other party thereto that first parties are duly authorized and empowered to execute every such instrument, and the interest of the second party hereunder and of any and all persons claiming by, through, or under him, is hereby declared to be personal property and to be in the avails, earnings and proceeds arising from the disposition of the premises, the intention being to vest in first parties the entire legal and equitable title in fee in and to all of the premises above described; and that second party hereunder shall not have any title or interest, legal or equitable, in and to said real estate as such, but only an interest in the earnings, avails, and proceeds thereof as aforesaid.

"8. The first parties agree that they will at any time hereafter convey said premises by a special warranty deed warranting as to their own acts only, to any person or corporation upon direction in writing to do so by second party, provided, however, that the mortgage and note to be executed by first parties as aforesaid shall have been paid in full and cancelled; and provided further that said real estate shall have not been previously sold by first parties in accordance with the terms hereof.

"9. Second party further agrees that first party shall have the full right and authority to sell said real estate at a price to be determined by first party in the event they deem themselves insecure, or in the event that premises are not kept in good repair, or

in the event the taxes or insurance on said premises are not paid promptly when due, or on the default or failure of second party to keep any of the covenants or make any of the payments provided to be kept or made in accordance with the terms of this agreement, or of the mortgage to be executed by first parties as is herein provided"

Thereafter, with Swanson's knowledge, the Randalls conveyed to the Hammersmiths, who obtained a $9600 loan from Carrico & Wilgus. The proceeds of this loan were distributed pursuant to the agreement and on January 9, 1951, the Hammersmiths reconveyed to Randall. For several years Swanson made monthly payments to Randall, and Randall, in turn, made the payments to Carrico & Wilgus. The payments made by Swanson would have reduced the $9600 loan to a balance of $5,936.63, the amount allowed Rock River as a lien on the premises.

In 1958 Randall began another series of transactions relating to this property. He obtained $1050 on a junior mortgage in October, 1958, which mortgage was later released. In March, 1959, he obtained $4,017.62 from Aire Flow Heating Co. by use of a junior mortgage. On January 10, 1961, Randall conveyed to Richard and Carmen Dapper, who mortgaged the premises to Rock River Savings and Loan Association. The proceeds of this loan were used to pay off the balance of $5,936.63 due on the Carrico & Wilgus mortgage and the balance of the Aire Flow junior mortgage. The balance was paid to Randall. The Dappers then reconveyed to Randall in April, 1961, and Randall executed another junior mortgage to H. Shore & Associates. At all times during these transactions Swanson was in possession of the premises.

The sole appellant, Rock River Savings and Loan, argues first that the trial court erred in denying its petition for change of venue. It further argues that plaintiff failed to prove a constructive trust; that Rock River did not violate the express trust agreement; and that plaintiff is estopped to assert a hostile title.

Plaintiff insists that the petition for change of venue was not filed in apt time; that the mortgage to Rock River is void either because of a breach of a confidential agreement, or because the mortgage was in excess of Randall's authority, and Swanson's possession gave Rock River notice of his rights.

We agree that the trial court did not err in denying Rock River's petition for change of venue. Although the petition was in proper form, it was not filed until after the trial court had denied Rock River's motion to strike the complaint and ordered Rock River to answer. It is well settled that a petition for change of venue comes too late when it is presented after the judge has ruled on a substantive issue in the cause. (*City of Chicago* v. *Hamlin,* 24 Ill.2d 148; *People* v. *Chambers,* 9 Ill.2d 83.) The denial of Rock River's motion to strike was such a substantive ruling, and the petition for change of venue was properly denied.

The complaint herein sets forth the express agreement governing the transfer of title from plaintiff to Randall, but seeks to impose a constructive trust upon the real estate. The record before us indicates some uncertainty of both the parties and the court as to whether the case was being tried on a theory of constructive trust or the breach of an express trust.

It is clear, however, that the express agreement was pleaded and proved on the trial, and we believe the evidence shows that it was understandingly entered into by Swanson and Randall. It is our opinion that the evidence falls short of establishing a constructive trust. No fraud is shown to have existed at the time the written agreement was executed, nor is there proof of undue influence arising out of a fiduciary relationship at the time of the transaction. In the absence of such elements, plaintiff has failed to sustain the imposition of a constructive trust. (*Evans* v. *Berko,* 408 Ill. 438.) The breach of an express trust or a written

contract does not give rise to a constructive trust. (*Engle-stein* v. *Mintz,* 345 Ill. 48.) An express trust is based upon the intention of the parties, while a constructive trust is a distinctly different concept. It arises, not out of an agreement or intention, but by operation of law to prevent unjust enrichment. *Anderson* v. *Lybeck,* 15 Ill.2d 227, 232; *Carroll* v. *Caldwell,* 12 Ill.2d 487, 493; Restatement of Law, Restitution, § 160.

The proof in this case is that Swanson and Randall entered into a written agreement with relation to the real property in question. The agreement establishd a relation of settlor and trustee, and the intention of the parties as expressed in that agreement must govern our decision.

Before analyzing the written agreement, the position of the defendant appellant, Rock River Savings and Loan, should be established. The record indicates that Rock River was a mortgagee for value from the record title holder and had no actual knowledge of the unrecorded written agreement between Swanson and Randall. However, Swanson was in possession of the premises at the time of the mortgage and for many years prior thereto. The law is well settled that such possession gave Rock River constructive notice of Swanson's rights to the same extent as if the Swanson-Randall agreement had been recorded. (*Bullard* v. *Turner,* 357 Ill. 279; *Nelson* v. *Joshel,* 305 Ill. 420.) We therefore conclude that the merits of this controversy turn on the right of Rock River to loan the Dappers $13,000 secured by a mortgage on the real estate with knowledge of the terms of the express trust between Swanson and Randall.

The purpose of the Swanson-Randall agreement was to provide a method of obtaining a $9600 loan on the premises. Pursuant to this agreement Randall was vested with clear record title, and paragraph 7 of the agreement specifically empowered Randall to deal with the real estate as his own. Paragraph 7 further absolves any mortgagee from any duty

to see that the terms of the agreement have been complied with. Such provisions were mutually agreed upon by Swanson and Randall in order to accomplish the purposes of the trust.

It is our opinion that Rock River Savings and Loan Association was an innocent mortgagee for value, and was charged with constructive notice of the written trust agreement. However, such trust agreement, by its terms, relieved Rock River of any duty to concern itself with any limitation on the power of the trustee, or the application of the proceeds of the mortgage loan.

While the issue is not before us, the record indicates that the action of Randall was a violation of his trust, and that the proceeds of the mortgages to Rock River and others were converted to his own use. Nevertheless Swanson could absolve any innocent mortgagee from responsibility for Randall's conduct, and by his agreement he did so. To vitiate such an exculpatory clause, deliberately entered into, would serve to limit the flexibility and practicality of land trusts, and would abrogate the express intention of the settlor.

It has often been stated that if one of two innocent parties must suffer from the fraud of a third person, the loss must fall on the one who enabled the third person to commit the fraud. (*Dombro v. Hugo,* 370 Ill. 381.) In the present case Swanson, for his own benefit, placed record title in Randall, expressly absolved those dealing with Randall for any responsibility for his acts, and permitted Randall to deal with the property as his own for more than ten years. Swanson, rather than Rock River, must bear the loss arising from Randall's default. The trial court, therefore, erred in limiting Rock River's mortgage lien to the amount unpaid by Swanson on the $9600 loan.

We see no merit in Swanson's further argument that the trust terminated automatically upon the obtaining of the $9600 loan and the distribution of the proceeds. An examination of the trust agreement makes it clear that title

was to be in Randall and the trust was to remain in existence until the $9600 loan was fully paid and the note cancelled, and at the time of the Rock River mortgage this had not been done.

Because of the foregoing conclusions, the decree of the circuit court of Winnebago County must be reversed insofar as it affects the mortgage lien held by the defendant Rock River Savings and Loan Association. As to that part of the decree affecting other defendants who did not appeal, the decree must stand.

*Decree reversed in part.*