AMERICAN STATE BANK, Adm'r of the Estate of Robert Dean Stivers, Deceased, *et al.*, Plaintiffs-Appellees, *v.* THE COUNTY OF WOODFORD *et al.*, Defendants-Appellants.—TERRY B. SCOTT, Plaintiff-Appellee, *v.* THE COUNTY OF WOODFORD, Defendant-Appellant.

Fourth District   No. 14172

Opinion filed November 10, 1977.—Modified on denial of rehearing January 5, 1978.

124

Judge & Schirott, Ltd., of Park Ridge (William W. Kurnik and Jay S. Judge, of counsel), for appellants.

Costigan, Wollrab, Fraker, Wochner & Neirynck, of Bloomington, for appellee Terry B. Scott.

Jerome Mirza, Livingston, Barger, Brandt, Slater & Schroeder, and Thomson, Thomson, Zanoni & Flynn, all of Bloomington, for appellees.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal lies from jury verdicts totaling $275,200 rendered in favor of the plaintiffs and against the defendant county of Woodford. The occurrence was a collision on a rural road on March 11, 1973. The alleged negligence was the maintenance of the road by the defendant.

There existed in Woodford County in March 1973, a gravel road running east and west and known as Kappa Road. It was owned by

Woodford County but maintained by Palestine Township. Its width varied from 15 to 18 feet with grassy shoulders from 1 to 2 feet wide. It was hilly and just before the accident muddy on account of a recent rainstorm.

At about 5 p.m. on March 11, 1973, Terry Scott was proceeding eastward on Kappa Road in a 1967 Chevelle; about the same time Robert Stivers was proceeding westward in a 1965 Corvair. Stivers' vehicle had as passengers his wife, Patricia, and his children, Rebecca and Robert, Jr. Scott's passenger was one Charles Zimmerman, who is not involved in this litigation. The vehicles collided at the crest of a hill approximately 20 feet high. Robert Stivers was killed; his wife and children were injured. Terry Scott was injured.

The American State Bank, as administrator of the estate of Robert Stivers, Patricia Stivers, individually, and as mother and next friend of the minor children, filed suit against Terry Scott in the circuit court of McLean County. At about the same time, the same plaintiffs filed suit in the circuit court of Woodford County against the county of Woodford and its highway commissioner and Palestine Township and its highway commissioner. In McLean County, Scott filed a counterclaim against the bank and a third-party complaint against Woodford County. The causes were consolidated for trial in Woodford County; Scott's counterclaim was dismissed on his own motion, and trial was had on the two complaints and the third-party complaint. The jury found in favor of all plaintiffs and against Woodford County; it further found in favor of Palestine Township and against the plaintiffs. Verdicts were as follows: (1) Administrator for death of Robert Stivers, $225,000; (2) Scott, $30,000; (3) Patricia, individually, $12,500; (4) Patricia for Robert, Jr., $5,000; and (5) Patricia for Rebecca, $2,700. Post-trial motions were denied and the court entered judgment on the verdicts. This appeal followed.

Plaintiffs' theory against the defendant County was negligence in (a) permitting two-way traffic on Kappa Road whose topography would not permit such traffic; (b) failure to post signs to reduce speed; (c) failure to post signs to keep to extreme right; (d) failure to maintain width to accommodate two passing vehicles; and (e) failure to maintain shoulders so as to permit their use in an emergency. In the trial court defendant County vigorously argued its immunity but that theory has been abandoned in this court.

For purposes of convenience and clarity in this opinion, unless otherwise specifically indicated, "plaintiffs" will be used to designate all members of the Stivers family and Scott, together with the bank as administrator; Woodford County, the only defendant found liable, will be referred to as "County." Further factual matters will be developed in the opinion as may be necessary for better understanding.

The County's brief contains 10 separate issues. On oral argument, counsel for the County informed us that he intended to discuss three extensively, but was not waiving the others. We shall, therefore, take the issues as they appear in the brief, the first three being the ones emphasized in oral argument.

The issues are: (1) dènial by the trial court of a motion for change of venue; (2) mention of insurance by a venireman; (3) giving of an instruction regarding road standards; (4) refusal of the trial court to allow evidence of absence of other accidents on the road in question; (5) allowance into evidence of "Road Closed" signs installed one year after the occurrence; (6) admission of movie film of the road; (7) admission of loan agreements; (8) denial of setoff in the amount of the loan agreements; (9) contributory negligence of plaintiffs; and (10) proximate cause. Counsel further informed us that he contested liability as to all plaintiffs but amount of damages only as to the administrator.

## I

The County's first contention of error is the refusal of the trial judge to recuse himself on the County's motion.

On March 1, 1976, after the complaints had been on file for about two years, counsel for the County filed a motion for change of venue from the trial judge. The motion was supported by counsel's affidavit that he believed that the judge was prejudiced against him and that the prejudice had become known to him only a few days before. The affidavit set forth no particulars but alleged prejudice only in general terms.

The court held a hearing on the motion. No specifics were elicited at the hearing and plaintiffs' counsel objected on that basis, since the trial judge had theretofore ruled on matters of substance adversely to the County (e.g., County's motion to strike and dismiss plaintiffs' complaint). The court denied the motion.

The controversy revolves about the interpretation of section 3 of the Venue Act (Ill. Rev. Stat. 1975, ch. 146, par. 3). It reads as follows:

> "Every application for a change of venue by a party or his attorney shall be by petition, setting forth the cause of the application and praying a change of venue, which petition shall be verified by the affidavit of the applicant. A petition for change of venue shall not be granted unless it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case, provided that if any grounds for such change of venue occurs thereafter, a petition for change of venue may be presented based upon such grounds."

The parties take diametrically opposite views of the meaning of this statute. County claims that the right to a change is absolute, providing

time requirements are met. Plaintiffs claim that specifics must be alleged and proved, if the petition comes after a ruling on a matter of substance. Both sides cite a plethora of cases in support of their respective positions. Rather than burden this opinion by attempting to analyze every case cited, we shall assume that the parties intended compliance with Supreme Court Rule 341(e)(5): "Cases shall be cited as near as may be in order of their importance." Ill. Rev. Stat. 1975, ch. 110A, par. 341(e)(5).

Plaintiffs' first cited case is *Caprata v. Black* (1970), 127 Ill. App. 2d 363, 262 N.E.2d 483. In that case the court said, "We consider this [*i.e.*, presentation of the petition] to have been timely, particularly since on the 13th the judge had merely continued the case and had made no ruling of any substantive issue." 127 Ill. App. 2d 363, 366, 262 N.E.2d 483, 484.

The County cites first *Swanson v. Randall* (1964), 30 Ill. 2d 194, 198, 195 N.E.2d 656, 659. There the court said, "It is well settled that a petition for change of venue comes too late when it is presented after the judge has ruled on a substantive issue in the cause. [Citations.] The denial of Rock River's motion to strike was such a substantive ruling, and the petition for change of venue was properly denied."

■■ It is thus apparent that the authorities for both sides are in agreement, as are all the rest of the cited cases. The right to a change of venue is absolute, if presented before the judge has ruled on any substantive issue. No one seriously quarrels with this proposition. The salutary principle is that one should not be compelled to plead his cause before a judge who is prejudiced, whether actually or only by suspicion, and the right of removal is mandatory if made in apt time and from a single judge in a civil suit. The cases denying a change turn on some different set of facts (*e.g.*, change from too many judges, *Rosewood Corp. v. Transamerica Insurance Co.* (1974), 57 Ill. 2d 247, 311 N.E.2d 673).

However, after a substantive ruling the free gate closes and the one seeking change is put on his proof to demonstrate actual prejudice. This is the correlative salutary principle that one may not "judge shop" until he finds one in total sympathy to his cause. Any other rule would spell the immediate demise of the adversary system.

■■ The Fifth District Appellate Court was faced with a case almost identical to the one at bar in *Templeton v. First National Bank* (1977), 47 Ill. App. 3d 443, 447, 362 N.E.2d 33, 36. After reviewing the legislative history of section 3 of the Venue Act, that court said, "We do not think that the words 'may be presented upon such grounds' indicate a legislative intention that the right to a change of venue in such a case be absolute. We think rather that the proviso should be interpreted to require specific allegations to support the charges of prejudice, and that a petition presented after the trial or hearing has begun, or after the judge to whom

it is presented has ruled on a substantial issue in the case, should be granted only in the sound discretion of the court." We concur with the Fifth District.

In the case at bar, no specific allegations were presented to the trial judge, either in the affidavit or at the hearing held on the petition. Therefore, his discretion in denying the petition will not be disturbed.

## II

The County's second principal contention of error concerns a colloquy which occurred during *voir dire*.

■■ Unfortunately, no record was made of the *voir dire* until after the incident in question had occurred and had been ruled upon by the trial judge. Under these circumstances we would normally be privileged to say that the point has not been properly preserved for review and resolve it against the appealing party. *Augustine v. Stotts* (1963), 40 Ill. App. 2d 428, 189 N.E.2d 757; *Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 331 N.E.2d 380.

However, the abstract contains an in-chambers conference among court and counsel and although far from complete, it contains enough information that we may make a limited examination of the problem.

The conference opened with a statement by the trial judge as follows:

> "We have been selecting the jury without a record on voir dire, and four are sworn and working on the second panel, and young woman named Mary Isoardi (I-s-o-a-r-d-i) just replaced an excused juror, and the Court asked her whether based on all of the questions she had heard asked all the other jurors, * * * And in response * * * she said, * * * that her father runs an insurance agency in Roanoke and that she is the secretary for him, and that he is the agent who handles all of the insurance for Woodford County."

Two things are immediately apparent from this statement: (1) We do not know what "all the questions she had heard" were, and (2) the answer came in inquiry from the court, not from counsel. In their argument on the motion for mistrial made at the time and in their briefs before this court, both parties appear to be in substantial agreement that the prior questions related principally to workmen's compensation and insurance in general without specific reference to liability insurance.

■■ While the mention of insurance during the course of trial is still frowned on by the Illinois courts, it is not quite the *bete noir* that it was a generation or more ago. The ubiquity of insurance, the tendency of the carriers to lament their underwriting losses in the public prints, and the increasing sophistication of jurors on the subject all tend to water down what was formerly an absolute rule. The deliberate injection by counsel,

even by innuendo, of insurance is still a strong basis for mistrial, but an inadvertent statement by a juror is no longer regarded as legal leprosy. See an excellent discussion of the subject in *Kitsch v. Goode* (1977), 48 Ill. App. 3d 260, 362 N.E.2d 446.

Since the answer came in response to a query by the court and not from counsel and since it was inadvertent, we believe that the trial court was in a better position to judge the effect and his finding will not be disturbed.

### III

The County's third serious contention of error concerns the giving over objection of plaintiffs' instruction No. 20.

The complained-of instruction was given over objection in the form of IPI Civil 2d No. 60.01 and read as follows:

"There was in force in the State of Illinois at the time of the occurrence in question certain standards passed by the Department of Transportation of the State of Illinois which provided minimum design policies as follows:

(1) A minimum required width of 20 feet of road surface with 2 feet shoulders on each side for the lowest class of county road;

(2) A minimum required width of 16 feet of road surface with 2 feet shoulders on each side for the lowest class of township road;

(3) Upon the lowest class of county road a design speed of at least 30 miles per hour with minimum stopping sight distance of 200 feet and minimum passing sight distance of 1100 feet.

If you decide that a party violated these standards on the occasion, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was negligent before and at the time of the occurrence."

The instruction grew out of two exhibits and certain testimony adduced by plaintiffs. The exhibits were two documents entitled "Minimum Design Policies for Federal Aid Secondary Highways, County and Road District Roads: General Requirements" and "Design Policies for Federal Aid Secondary Highways, County and Road District Roads: Geometric Requirements." Both were extracted from a manual issued by the State of Illinois Department of Transportation. The abstract does not indicate whether objection was made to the introduction of the exhibits, but the question is academic because County's counsel in oral argument stated that he felt they were properly received.

Both exhibits are in tabular form: Vertical columns depict various classes of roads; horizontal columns contain information regarding access control, design traffic, design speed, type of surface, width of surface, shoulders and right-of-way, earth slopes, minimum stopping and passing sight distances, horizontal and vertical alignment, *etc.*

Plaintiffs presented as a witness John Edward Baerwald, a professor of transportation and traffic engineering at the University of Illinois. He testified as an expert and used the exhibits mentioned above. He was extensively examined and cross-examined concerning the safety of Kappa Road and further testified that the standards applied to the road. Additionally, two defense witnesses, Harold Imhoff, former Woodford County Superintendent of Highways, and Melvin Larson, Engineer of Local Roads and Streets of the Department of Transportation, testified that these standards were objective criteria to measure the safety of the road at the time of the occurrence.

Based on all of the foregoing, the court gave the instruction. No question is raised but that the instruction correctly states the standards as they appear in the exhibits.

County made various objections to the instruction at the instruction conference and again in this court. In essence, the objections appear to be that the instruction is forcing and that the jury should have been informed that the standards were only criteria.

Since *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204, there has been no dispute that standards are admissible as indicia of care. Until fairly recently, the method of presentation has been uncertain. IPI Civil No. 60.01 has been thought to be a vehicle, but the "Notes on Use" indicate that it should be limited to statutes or ordinances. However, the supreme court has recently indicated that it may be used for the presentation of standards to a jury. See *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93.

However, in *Davis* the supreme court made clear that administrative regulations must have the force of law before IPI Civil No. 60.01 can be given by saying:

"We find no convincing reason why violation of administrative rules, regulations, and orders designed to protect human life or property should not also be considered *prima facie* evidence of negligence, provided they are validly adopted and have the force of law. [Citations.]" *Davis*, 64 Ill. 2d 380, 390, 356 N.E.2d 93, 97.

■■ The Illinois Highway Code (Ill. Rev. Stat. 1973, ch. 121, pars. 1—101 to 11—107) does not give the Department of Transportation, whose standard was the subject of the instruction, power to require county

highways to conform to any particular standard. Accordingly, the standard in question issued by that department did not have "the force of law" and the trial court was not required to give the instruction.

■■ Nonetheless, the giving of the instruction was not reversible error because: (a) this precise objection was not made at the conference on instructions, and (b) the instruction properly stated the consideration to be given by the jury to the evidence, so no substantial prejudice resulted.

County further complains that a violation of the standards was not shown to be the proximate cause of the death and injuries. The evidence was replete that the cause of the accident was the narrowness of the road, the lack of shoulders and inadequate sight distances.

We find no reversible error in the giving of plaintiffs' instruction No. 20.

## IV

County next assigns as error the refusal of the trial court to admit evidence of the absence of other accidents at the site.

■■ The matter arose on County's examination of a witness who was Township Road Commissioner. He was asked about prior accidents, and plaintiffs' objection to the question was sustained. The matter was not pursued further.

County had twice previously made a motion *in limine* to exclude "evidence regarding other accidents at this location." The trial court allowed the second motion. Consequently, the matter had already been resolved in County's favor. It cannot now be heard to complain about something it sought and obtained.

## V

County's next assignment of error is the admission into evidence of three photographs of signs which stated: "ROAD CLOSED" with some additional information. These signs were placed on Kappa Road one year after the accident.

■■ Undoubtedly, the rule in Illinois is that post-occurrence remedial measures are inadmissible to prove want of care at the time of the occurrence, and just as undoubtedly, the ingenuity of the bar has carved out many exceptions. The exception claimed here by plaintiffs is twofold—feasibility and ordinary maintenance. We find neither particularly persuasive. The feasibility exception has been generally limited to products liability cases (see, *e.g., Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, 281 N.E.2d 749), and we have been unable to find any cases directly on point as to ordinary maintenance. *Kuhl v. Illinois Central R.R. Co.* (1903), 111 Ill. App. 323, stands for a causation exception, not maintenance, as contended by plaintiffs.

The record discloses that the jury was taken for a view of the scene of

the occurrence without objection. This happened during the trial which was more than two years after the accident. Whether the signs were still in place is not shown by the record, but even if they were not, the view itself is sufficient to overcome the error in admitting the photographs. The jury was able to see for itself what the post-occurrence conditions were.

The admission of the photographs was error, but not sufficient error to cause reversal.

■■ The County further complains about the refusal of its limiting instruction on the photographs. It was entitled to such an instruction, but the failure to instruct is not sufficient error to warrant reversal.

## VI

County's sixth contention of error is the admission into evidence, over its objection, of five reels of motion picture film taken after the occurrence. The films purported to depict what drivers in cars proceeding both east and west on Kappa Road would have seen at and before the time of the collision. A considerable effort was made to duplicate the conditions which existed on March 11, 1973 (*e.g.*, same types of cars, same speeds, cameras in the drivers' seats and at eye level). In addition, witnesses who arrived on the scene shortly after the collision testified that the films depicted the conditions existing then as true and correct, except the road was drier and had less gravel upon it.

With the rapid advancement of technology in recent times, the whole subject of the use of demonstrative evidence has been undergoing scrutiny. In an earlier day, still photographs were viewed with suspicion and an elaborate foundation was required for their admission into evidence. No longer. The same held true for X rays. Courts and legislatures are still struggling with the breathalyzer and the polygraph.

Earlier decisions laid great emphasis on the methods of taking, of processing and of projecting motion picture films. More recent cases tend to ignore the mechanics and look to see whether the film accurately depicts what a witness would have seen. In this regard motion picture films are following the history of the still photograph. The safety valve, as always, is the discretion of the trial judge.

In the case at bar two things militate against the County's objection to the films. First, County itself introduced an elaborate scale model of the road which was exhibited to the jury and used in the course of trial. Second, as detailed above, the jury was taken for a view of the scene. In addition to these factors, a variety of still photographs were before the jury. In view of all this, we fail to perceive how the jury could have been misled.

County lays stress on the recent decision of *French v. City of Springfield* (1976), 65 Ill. 2d 74, 357 N.E.2d 438. We find *French*

distinguishable. There the movie was made during the daytime while the accident occurred at night and several factual events and items were omitted. Here the jury had the benefit of the model and of a view. In *French* the jury had only the movie, which, as the supreme court remarked, "preconditioned" their minds. Such danger is not present in the instant case.

■■ Considering the films in the context of the entire structure of evidence erected by both parties, we cannot find an abuse of its discretion by the trial court in admitting them.

## VII

County next assigns as error the refusal of the trial court to admit portions of a loan agreement into evidence.

At the outset, we note that the record is somewhat confusing in that there were two loan agreements: (1) between Allstate Insurance Company (Scott's insurer) and the Bank and the Stivers; (2) between Aetna Insurance Company (Stivers' insurer) and Scott. In its brief, County refers only to the agreement between Aetna and Scott; the abstract shows a colloquy among court and counsel concerning "that" loan agreement; we can only assume that the Aetna-Scott agreement was the subject of the discussion.

In any event, County sought to introduce only the "operative" portions of the agreement in order to show bias on the part of Scott. Plaintiffs objected that the entire agreement be submitted to the jury if anything of this nature went to them. County objected that the agreement recited plaintiffs' theory of the case (*i.e.,* negligence by County in either failing to close the road or to bring it up to standard). The court sustained plaintiffs' objection and the agreement was not submitted to the jury.

Since *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 303 N.E.2d 382, the admissibility and use of loan agreements have not been open to serious questions. There appears to be no general consensus of the bar as to the wisdom as a trial tactic of either admission or use. However, once the decision to offer has been made, the moving party must take the bitter with the sweet as with any piece of evidence.

■■ To allow only a portion of the agreement into evidence would be to permit the jury to speculate as to the reasons or circumstances for making and accepting the loan. Therefore, the entire agreement must be placed before the jury with an appropriate limiting instruction. This is the procedure dictated by *Reese*.

The overall purpose of introducing agreements is, as has been pointed out in prior decisions, to show bias on the part of a witness which might not appear on the face of things (*e.g.,* a dismissed defendant). However, in the case at bar, the Bank, the Stivers family, and Scott were all pointing

the finger at the County, not at each other, and this was readily apparent to the jury. Any bias on Scott's part was obvious with or without the agreement.

Furthermore, County's complaint that the agreement recited plaintiffs' theory of liability is vacuous. The theory was before the jury from the outset of the trial in pleadings, evidence, instructions, argument and all other phases.

The trial court was correct in ruling that the entire agreement, not just portions of it, must be introduced into evidence if anything concerning the agreement is to be submitted to the jury.

## VIII

County next contends that the trial court and this court should treat the loan agreement as covenants not to sue and allow a setoff on the verdicts in the amounts of the agreements.

■■ If the agreements are in fact covenants, County committed error in offering even a portion of them to the jury. Covenants are never admissible before a jury. (*Ryan v. Monson* (1961), 33 Ill. App. 2d 406, 179 N.E.2d 449.) One cannot create error and then seek advantage from it.

Apart from this, however, a reading of the document makes plain that the parties intended a loan agreement, not merely a covenant. Regardless of the nomenclature by which the arrangement was described, it neither made the case a sham as did the agreement in *Gatto v. Walgreen Drug Co.* (1975), 61 Ill. 2d 513, 337 N.E.2d 23, *cert. denied,* (1976), 425 U.S. 936, 48 L. Ed. 2d 178, 96 S. Ct. 1669, nor constituted assignments of causes of action as prohibited by *Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d 445, 322 N.E.2d 58. It is true that Scott agrees to forego his counterclaim against the Bank, but this does not appear improper under the rationale of *Reese.* Both of the drivers and County were potential concurrent tortfeasors, but this status is not yet required for a valid loan agreement. Professor Michael argues otherwise in *Mary Carter Agreements in Illinois* (1976), 64 Ill. B.J. 514, but the doctrine has yet to take root.

Since money was loaned to Scott in consideration of agreeing to "forego" his cause of action against the Stivers estate, the arrangment between the plaintiffs was both a loan agreement and one that contained a covenant not to sue. The reason that setoff is not required, however, is that the terms of the agreement required plaintiffs to repay the loans to the extent that recovery was obtained from County. Thus no plaintiff could make a double recovery and no plaintiff retained funds which could be applied to a setoff.

We find that the document was a loan agreement, not a covenant, and decline to order a setoff.

## IX

■■ County further contends that plaintiffs have failed to prove freedom from contributory negligence.

Contributory negligence is a peculiar function of a jury and its finding will be set aside only when all reasonable persons would find to the contrary. *Klimovich v. Crutcher* (1965), 57 Ill. App. 2d 444, 206 N.E.2d 723.

A careful reading of the evidence discloses that it does not overwhelmingly favor County on this issue and reasonable minds would differ upon it. Therefore, the finding of the jury will not be disturbed.

## X

Finally, County contends that the record as a whole fails to establish that its negligence, if any, was the proximate cause of plaintiffs' injuries and death.

In its brief before this court County does not take the position that its alleged negligence was merely a condition rather than the cause, nor does it take the position that there was any other intervening cause. Under such circumstances, the question of causation, like contributory negligence, must be resolved by the jury and only in case of egregious error will its finding be disturbed. We find no such error.

Having carefully considered each contention of error, we find nothing which would merit reversal of the verdict and judgment. Accordingly, they are afirmed.

Affirmed.

GREEN, P. J., and REARDON, J., concur.