JOSEPH D. HOOK, Plaintiff-Appellee, *v.* JAMES D. HEIM, Defendant-Appellant.—(KENNETH M. JONES *et al.*, Defendants.)

Fifth District No. 76-136

Opinion filed October 26, 1977.

Dennis E. Rose, of Brady, Donovan & Hatch, of Belleville, for appellant.

Al Pranaitis, of Hoagland, Maucker, Bernard & Almeter, of Alton, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Plaintiff, Joseph Hook, brought this action in the circuit court of Madison County for damages for personal injuries allegedly caused by the negligence of defendants, James Heim, Kenneth Jones and Robert Moore. A dram shop action against two additional defendants was dismissed prior to trial. During the course of the jury trial, the causes of action against Moore and Jones were dismissed on motion by Hook. The jury rendered a verdict against the remaining defendant, Heim, in the amount of $13,000, and a judgment was accordingly entered from which Heim now brings this appeal.

The issues Heim presents for review are: (1) whether the conduct of defendant Moore was an efficient intervening cause which should absolve Heim of liability; (2) whether a new trial is warranted due to the circumstances surrounding the loan receipt agreement between Hook and Jones; and (3) whether certain trial errors were committed.

On September 22, 1973, at approximately 1:30 a.m., defendant Heim was driving his pickup truck in a southerly direction on Route 67 near an establishment called Pat's 111. At the same time and place defendant Jones and a passenger were traveling in a northerly direction in Jones' automobile. Route 67 consists of two lanes. Each defendant testified that the other defendant was driving in the wrong lane. As the vehicles approached one another, each vehicle was turned sharply to its left to avoid impact but the right front fender of Jones' auto struck the right side of Heim's truck. After impact, the truck came to a rest in a ditch running alongside the north-bound lane while Jones' auto came to rest in the center of the road facing south.

A group of people, including plaintiff Hook came out from Pat's 111 to the scene of the collision. Hook went first to the passenger side of Jones' car and attempted to open the door on that side. When this was finally accomplished, Hook went around to the driver's side of the car leaving two or three others who were rendering aid to the injured passenger. Approximately five minutes had passed since the first impact. As Hook approached the driver's side, a third vehicle, driven by defendant Moore, struck Jones' auto which, in turn, struck Hook breaking his leg.

Jones testified that he and his passenger were in his car after the first collision when he saw another car coming toward him at 50 to 60 miles per hour. He also saw the silhouette of someone unsuccessfully trying to flag down Moore's vehicle but the vehicle did not even slow down before striking Jones' car head on.

Heim's first contention on appeal involves proximate cause. He argues

that the trial court erred in denying his motions for a directed verdict and for a judgment *n.o.v.* because his negligent actions were not the proximate cause of plaintiff's injury. While he does not dispute that his negligence was a cause in fact of the injury (see *Kerns v. Engelke*, 54 Ill. App. 3d 323, 369 N.E.2d 1284), he argues that the negligence of Moore was an intervening force which as a matter of law relieved him of legal responsibility for the consequent injury.

■■ For a negligent act to constitute the legal cause of an injury, the injury must be the natural and probable result of the negligent act and be of such a character as an ordinary prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that a defendant should have foreseen the precise harm which resulted from his act. (*Neering v. Illinois Central R.R. Co.*, 383 Ill. 366, 50 N.E.2d 497; *Ney v. Yellow Cab Co.*, 2 Ill. 2d 74, 117 N.E.2d 74.) An intervening force is one which actively operates in producing harm to another after a defendant's negligent act or omission has been committed. (*Buehler v. Whalen*, 41 Ill. App. 3d 446, 355 N.E.2d 99, *appeal allowed*, 64 Ill. 2d 595.) An intervening force will not break a causal connection if that force was itself probable or foreseeable by the original wrongdoer. (*Neering v. Illinois Central R. R. Co.*) Proximate cause is ordinarily a question for the jury to decide. Thus for Heim to now escape liability it must be demonstrated that the intervening force was unforeseeable as a matter of law. (*Davis v. Marathon Oil Co.*, 64 Ill. 2d 380, 356 N.E.2d 93.) The test in this regard is as enunciated in *Pedrick v. Peoria and Eastern R. R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513:

> "* * * verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

■■ In our view, the negligence of Moore cannot be characterized as unforeseeable as a matter of law. It was nighttime and the evidence shows only that there was minimal lighting in the area consisting of a sign in front of Pat's 111 and the headlights on Jones' and Heim's vehicles. Moreover, there was no evidence of any effective warning being given to other cars approaching the scene of the initial collision; the only evidence in this regard was that a person or persons attempted to flag down Moore just prior to the second impact but there was no evidence that these persons had lights, flares, or were otherwise observable. Following the initial collision, Jones' auto came to a rest on the center of the road blocking both lanes of the two lane highway. The second collision occurred approximately five minutes after the first collision. At that time

the several people present were still in the process of removing the occupants of Jones' car. We see nothing freakish or fantastic in the sequence of events which led to Hook's injury (see *Kerns v. Engelke*), rather a jury could find that the events were concatenated by circumstances that were not unusual or extraordinary and that Hook's injury was a natural and probable result of Heim's negligent actions. Accordingly, the trial court did not err in denying Heim's motions.

Heim next contends that the circumstances surrounding a loan receipt agreement entered into by Hook and Jones were such as require a new trial. Hook has moved to strike this portion of Heim's brief (which motion we have taken with the case), on the grounds that the argument is based upon facts not appearing of record. Since we find the record sufficient to establish reversible error (*Maborn v. Moyers*, 26 Ill. App. 3d 231, 325 N.E.2d 47), we deny Hook's motion.

The record shows that in return for a loan of $7,000 from Jones to be repaid solely from any judgment rendered in the cause, Hook agreed to exert reasonable efforts to obtain a judgment against Heim. The agreement, itself, has not been made part of the record. At a hearing on Heim's post-trial motion, counsel for Heim stated that prior to jury selection he was informed by the attorney representing Hook, in connection with a proposed settlement, that Hook and Jones were negotiating a loan receipt agreement. Counsel for Hook stated that the agreement was entered into either prior to trial or during the "very early" portions of the trial.

The record also shows the following participation by Jones as a party-defendant in the trial: he made an opening argument following jury selection; he cross-examined Hook's first witness, Dr. Beemer, who testified about Hook's injury; he then, himself, was called by Hook to testify under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60); and he cross-examined Heim, when Heim was called to testify by Hook under section 60. At the conclusion of Jones' cross-examination of Heim, Hook moved to dismiss Jones. Heim objected to a dismissal and moved for a mistrial arguing that the loan receipt agreement between Jones and Hook and the timing of the dismissal prejudiced the case against him. The trial court granted Hook's motion to dismiss. We note that Heim's reference to the loan receipt agreement was the only such reference to it made at any time prior to arguments on Heim's post-trial motion. When the reference was made by Heim, the court did not inquire into the nature and terms of the agreement or of the time of negotiation and execution thereof, nor did Hook or Jones disclose any such information at that time.

On appeal Heim contends, in effect, that it was the duty of Hook and Jones to fully disclose to the court the loan receipt agreement at the time

that it was entered. Heim particularly urges that it was reversible error for the contracting parties to have not so disclosed and for Jones to have continued his participation after the agreement was entered. Hook responds by arguing in effect that Heim may not now complain of the agreement since he had not inquired about the agreement during the trial nor had he presented any evidence thereon.

■■ In Illinois, loan receipt agreements have been approved within limits not here relevant. (*Reese v. Chicago, Burlington & Quincy R.R. Co.*, 55 Ill. 2d 356, 303 N.E.2d 382; *Harris v. Algonquin Ready Mix, Inc.*, 59 Ill. 2d 445, 322 N.E.2d 58; *Kerns v. Engelke*, 54 Ill. App. 3d 323, 369 N.E.2d 1284.) The court in *Reese* while approving such agreements, also cautioned that they could tend to "undermine the adversary nature and integrity of the proceedings" against the non-contracting defendants, but that this danger could be avoided through safeguards such as permitting the non-contracting defendant to cross-examine witnesses as to any bias resulting from the agreement for consideration by the jury. 55 Ill. 2d 356, 364, 303 N.E.2d 382, 387.

The issue raised in the case at bar touches upon the caution expressed in *Reese* and it is essentially a procedural question; whether the concealment of the loan receipt agreement for at least a portion of the trial amounts to reversible error.

In *Gatto v. Walgreen Drug Co.*, 61 Ill. 2d 513, 337 N.E.2d 23, the plaintiffs brought an action for personal injuries caused when a roof collapsed, against, among others, the lessors of the building. They in turn brought a third party action against Calumet, the company which had installed the roof. Judgment was entered for $120,000 in favor of the plaintiffs and against the lessors, and for the same amount in favor of the lessors and against Calumet. In a subsequent proceeding by Calumet to reopen the judgment, it was revealed that during the trial, the plaintiffs and the lessors had entered a loan receipt agreement in the amount of $80,000 which had been kept secret throughout the trial. The trial court, however, denied Calumet the relief it requested. The judgment was reversed in part in the appellate court (*Gatto v. Walgreen Drug Co.*, 23 Ill. App. 3d 628, 320 N.E.2d 222), and an appeal was taken to the supreme court.

The supreme court first referred to the possibility that Calumet had been generally aware of the existence of some arrangement between the plaintiffs and the lessors and then it stated:

> "The trial court appears to have taken the position that fraudulent concealment had not been shown on the ground that the attorneys for Calumet 'made no official inquiry' into whether or not the plaintiffs' claim against lessors had been settled. This position

was erroneous. The burden rested upon the persons who had entered into the settlement to disclose it. It was not the responsibility of Calumet or of the trial judge to ferret out the facts." (61 Ill. 2d 513, 522, 337 N.E.2d 23, 28.)

With regard to the participation of the lessors in the trial after execution of the agreement, the court stated that once the agreement was entered into there no longer was any controversy between the parties to it remaining to be decided.

"While our constitution provides that 'Circuit Courts shall have original jurisdiction of all justiciable matters' (Ill. Const. 1970, art. VI, sec. 9), it does not confer jurisdiction to decide sham controversies. No 'justiciable matter' exists where two former adversary parties have settled their differences as to all the issues they are purportedly litigating before the trial court." (61 Ill. 2d 513, 522-23, 337 N.E.2d 23, 29.)

Moreover, with regard to the concealment of the agreement during trial, the court, after discussing the safeguards suggested in *Reese*, stated:

"Quite apart from any question as to the effectiveness of these safeguards [citation], they cannot be utilized if the loan agreement is kept secret." (61 Ill. 2d 513, 523, 337 N.E.2d 23, 29.)

Therefore, because of the concealment of the agreement by the plaintiffs and the lessors throughout the trial and the resulting sham proceedings between them, the court reversed *in toto* the judgment of the trial court.

In the case at bar, it is undisputed that the loan receipt agreement had been entered just prior to trial or during the early portions of it. Yet the existence of the agreement was not disclosed by the contracting parties at the time it was entered. In addition, Hook's motion to dismiss Jones was not made at the time the agreement was entered but at a subsequent point in time. However, Hook argues that the instant case is distinguishable from *Gatto*, where the concealment of the agreement took place throughout the trial, since here, Hook urges, the agreement may be considered as having been effectively disclosed at the time of the motion to dismiss. Indeed, prior to jury selection counsel for Heim had been informed of negotiations between Hook and Jones for a loan receipt agreement. Subsequently, when Hook moved to dismiss Jones, it appears that the attorney for Heim correctly concluded that such an agreement had been entered into and he so informed the trial judge. Hook argues, on this basis, that the concealment of the agreement for only a portion of the trial does not have the same prejudicial impact as a concealment throughout the trial would have had since Heim did have the opportunity to utilize the safeguards suggested in *Reese*. We find the distinction urged to be unpersuasive.

■■ ■ Underlying *Gatto* is the recognition that the loan receipt

agreement settled the controversy between the contracting parties and affected the legal relationships among all the parties to the original lawsuit. Hence the court required the contracting parties to disclose the agreement at the time it was entered in order to preclude the litigation of a sham controversy, to avoid the false impression of a continuing adversary relationship between the contracting parties and to avoid any unfairness in the litigation of the remaining legitimate claims. The determination in *Gatto*, however, did not rest on any demonstrated prejudice against Calumet arising from the concealment and, as noted by the appellate court, no such prejudice was shown in the record (23 Ill. App. 3d 628, 640, 320 N.E.2d 222, 231). Instead the key in *Gatto* was the fact of concealment. It follows then that whether the concealment continues throughout the trial, as in *Gatto*, or only through a portion of the proceedings, as in the case at bar, is of no import. To hold otherwise would permit concealment of such an agreement until the most opportune moment during the trial and would convert a strict duty to disclose into a question of trial tactics.

When Hook and Jones entered the agreement they resolved the controversy between them. Their rights and liabilities, *inter se,* became fixed and would remain unaffected by any verdict in favor of or against Jones. Jones agreed to pay Hook $7,000 and to be repaid, if at all, only from any judgment against Heim. Thereafter Jones stood to gain an immediate benefit from Hook's continued prosecution of the action against Heim. Moreover, the only issue remaining to be litigated was whether and in what amount Hook could recover from Heim. Any purported claim by Hook against Jones would clearly be a sham and any continuing participation by Jones in the trial as a party defendant would be a distortion of the actual lack of an adversary relationship between Hook and Jones.

Having settled their controversy it became the duty of the contracting parties to disclose the agreement so that the trial court could dismiss Hook's claim against Jones and so that Heim could utilize the information as he might properly choose, to protect his interests. However, the agreement was not then disclosed but rather Jones continued his participation in the trial under a veil of falsehood through jury selection, opening arguments and most of Hook's case-in-chief, during which Jones was called as an adverse witness under section 60 of the Civil Practice Act. We find that the failure to disclose the agreement and the continued participation of Jones in the trial after entry of the agreement could only have served to undermine the adversary nature and the integrity of the proceedings. That following the dismissal of Jones, Heim took no steps to reveal the agreement to the jury does not estop him from now complaining of the concealment of the agreement, as urged by Hook,

since his failure to so act cannot be construed as an acquiescence in the concealment and, in any event, we find no authority permitting a party to acquiesce in the litigation of a sham controversy. Consequently, we find that the trial court erred in denying Heim's motion for a new trial.

In light of our holding, we need not consider the other contentions raised by Heim. For the foregoing reasons the judgment of the circuit court of Madison County is reversed and the case remanded for a new trial.

Reversed and remanded for a new trial.

KARNS and G. J. MORAN, JJ., concur.