DIANE KAY SCHELL, Plaintiff-Appellant, *v.* FLOYD W. ALBRECHT *et al.*, Defendants-Appellees.

Third District No. 77-160

Opinion filed November 29, 1978.

Anthony C. Raccuglia, of Peru, for appellant.

Paul Perona, Jr., and Gary L. Peterlin, both of Perona and Perona, of Spring Valley, and Watts C. Johnson, of Johnson, Martin & Russell, of Princeton, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Mr. Justice Benjamin Cardozo once acknowledged the troublesomeness of labels. "A fertile source of perversion in constitutional theory," he said, "is the tyranny of labels." (*Snyder v. Massachusetts* (1934), 291 U.S. 97, 78 L. Ed. 674, 54 S. Ct. 330.) The case before us revolves around labels and the extent to which this court ought to be directed by the application of labels.

The plaintiff in this case is Diane Kay Schell, now Diane Kay Patelli, who sued for damages as a result of injuries received in an automobile accident while a passenger in a car driven by one of the defendants, Debra Z. Galetti. The automobile driven by Galetti collided with a truck driven by another defendant, Stephen F. Albrecht, and owned by a third defendant, Floyd W. Albrecht.

The accident occurred on the 11th day of May 1973, at the intersection of U.S. Highway 6 with Illinois Highway 89. The Galetti automobile was east-bound on Route 6, while the Albrecht truck was north-bound on Route 89 at the time of the collision. In her complaint the plaintiff names as co-defendants Debra Z. Galetti, Stephen F. Albrecht, and Floyd W. Albrecht, alleging that they were jointly and severally liable for the injuries she incurred.

The defendant Floyd W. Albrecht filed a cross-complaint for property

damage against the defendant Debra Z. Galetti. The cause proceeded to trial before a jury on September 27, 1976, in the circuit court of Bureau County.

On the 28th day of September 1976, the plaintiff and defendants Floyd W. Albrecht and Stephen F. Albrecht entered into an oral agreement. That agreement provided as follows: (1) Upon the payment of the sum of $2500 to the plaintiff, the plaintiff would not enforce a judgment that was rendered against the two Albrecht defendants, provided that judgment was also rendered against the defendant Galetti; (2) That the two Albrecht defendants would pay the sum of $2500 to the plaintiff, provided, and if, all of the defendants were found not guilty by the jury; (3) that the oral agreement was null and void if a verdict was returned only against one or both of the defendants Albrecht, and not against the defendant Galetti, and that the nullification of said agreement would permit the plaintiff to collect the total judgment from the two Albrecht defendants. The oral agreement was not related to the defendant Galetti's attorney or to the trial judge.

At the conclusion of the trial, a verdict for plaintiff was returned by the jury against all defendants in the amount of $40,000 and costs of suit. The verdict was for defendant Galetti on the cross-complaint. Within seven days from the date of the jury's verdict, the plaintiff's attorney wrote to defendant Galetti's attorney advising him of the oral agreement which existed. Subsequently the defendant Galetti filed a motion for a new trial which was granted by the trial court because of the secret nature of the agreement between plaintiff and the Albrecht defendants. A week later the trial court granted defendant Albrecht a new trial on his cross-complaint against Galetti based on the same rationale.

The plaintiff petitioned this court for leave to appeal the circuit court's order granting defendant Galetti a new trial and defendant Galetti sought leave to appeal the order granting defendant Albrecht a new trial on the cross-complaint. In both instances leave was granted.

The Illinois courts have frequently dealt with agreements between a plaintiff and one of several defendants. There exist a whole family of such agreements, with the number of variations "limited only by the ingenuity of counsel * * * ." (Michael, *Mary Carter Agreements in Illinois*, 64 Ill. B. J. 514 (1976).) In each case the Illinois courts dealt with a particular species from this family of agreements. There emerges from the cases a consistent policy and concern with regard to this family of agreements and yet as the particular nature of each species of agreement differs, so too does the legal effect of each species of agreement differ under Illinois law. Our task, unlike the biologist who labels living organisms according to their species, is not to label this agreement, but to analyze the policies and concerns previously announced by the courts and thereby determine what the legal effect of this agreement ought to be.

In *Gatto v. Walgreen Drug Company* (1975), 61 Ill. 2d 513, 337 N.E.2d 23, an understanding entitled "Agreement not to Execute" was held to have removed any justiciable controversy from the litigation and thus had terminated same. In *Gatto*, the plaintiff and defendant agreed to a purchase of peace for $80,000. Defendant was awarded the judgment against a third-party defendant on an indemnity theory, and defendant's assignee sought to execute on that judgment. The court in *Gatto* emphasized that the Illinois Constitution (Ill. Const. 1970, art. VI, §9) confers jurisdiction to the judiciary over justiciable matters, not sham controversies. If the indemnitor's liability was derivative, then there could be no controversy as to the indemnitor's liability for amounts exceeding $80,000. The theme that emerges from *Gatto* is the court's concern for the integrity of the adversary nature of the judicial process.

The parties in *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 303 N.E.2d 382, labeled their agreement a "loan receipt." In *Reese* the plaintiff accepted a loan from one of two joint defendants and then moved to dismiss the lending defendant from the case. Under the term of the loan plaintiff was only obligated to repay the lending defendant if and to the extent plaintiff recovered a judgment from the undismissed defendant. Again the Illinois Supreme Court expressed concern about the integrity of the judicial process and focused on a paramount policy of safeguarding the adversary nature of this system. The *Reese* court found sufficient safeguards present and affirmed the judgment against the undismissed defendant.

There are factual distinctions between *Reese* and *Gatto* that must not be overlooked. In *Reese* the nonagreeing defendant was directly liable to plaintiff, not derivatively liable as in *Gatto*. That is, the agreement of one joint tort-feasor could not circumscribe the maximum liability of another joint tort-feasor as the liability of an indemnitee could circumscribe the maximum liability of an indemnitor. Secondly, the agreeing defendant was dismissed from the action so the court was not in the position of adjudicating a non-existent controversy. Finally, if as a result of the agreement any bias or prejudice was attributable to witnesses before the court, because the agreement in *Reese* was made known to the court and counsel, the opportunity for cross-examination did exist.

An understanding entitled "Agreement Not to Execute Against Certain Assets" did not undermine the adversary nature of the judicial process in *Thornton v. Paul* (1977), 51 Ill. App. 3d 337, 366 N.E.2d 1048, because even though the agreeing defendant remained in the case, the agreement did not remove either the question of liability or damages from the controversy. Further, despite the undisclosed nature of the agreement, the nonagreeing defendants could not claim injury because of an inability to cross-examine witnesses on the issue of bias inasmuch as said defendant was defaulted.

■■ Agreements cloaked with various labels have been considered by the Illinois courts in other reported cases. (*Hook v. Heim* (1977), 54 Ill. App. 3d 368, 369 N.E.2d 563; *Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 369 N.E.2d 1284; *American State Bank v. County of Woodford* (1977), 55 Ill. App. 3d 123, 371 N.E.2d 232; *Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d 445, 322 N.E.2d 58.) In each instance, the courts have insisted that the adversary relationship between the parties must be preserved. Additionally, the opportunity to show a witness's bias arising as a result of the agreement is essential. Only if these twin concerns do not present themselves as a result of the agreement between plaintiff and defendant will the court be satisfied that the integrity of the judicial process is not jeopardized.

Whether the case at bar involves a loan receipt agreement before judgment, a loan receipt agreement after judgment, an agreement not to execute, an agreement with dismissal, an agreement without dismissal, an agreement with disclosure or an agreement without disclosure is not dispositive of this appeal. We will not succumb to the perversion of labels.

■■ As between the defendant Albrecht on his cross-complaint against defendant Galetti, we believe a new trial is not required. The agreement hereinbefore set forth did not remove any issues from the dispute between these parties on the cross-complaint. The issues of failure of care, causation, damages, and proximate cause all remained in dispute. There was a real justiciable controversy between the parties. No charade was foisted upon the court.

Nor were witnesses untested for possible ulterior motives or questionable credibility. The defendant Albrecht, who seeks a new trial on the cross-complaint, cannot be injured by a failure to cross-examine witnesses when such failure was by his own design. If the agreement resulted in a bias on the part of any witness, such bias could have been revealed on cross-examination. Although the agreement here was undisclosed, Albrecht was a party to the agreement, and thus cannot complain of its secrecy. Nondisclosure under these circumstances did not undermine the integrity of the adversary nature of the proceedings. Nondisclosure did not deny Albrecht the opportunity to test the bias of any witness.

■■ In contrast, the verdict for the plaintiff against all defendants must not be allowed to stand. We affirm the order of the trial court granting a new trial on plaintiff's complaint against the three defendants. To continue to litigate the issues of liability or damages as between plaintiff and the Albrecht defendants was a sham. The Albrecht defendants agreed to pay plaintiff $2500 whether or not the jury found them liable. To continue to litigate the issue of their liability was but a feigned encounter. Concededly, defendant Galetti's liability was still an issue, and a negative

finding thereon by the jury could nullify the agreement. But at best this only results in the Albrechts' liability being conditionally at issue, and to permit such proceedings undermines the very nature of the judicial process.

The same rationale applies to the issue of damages. Regardless of what the jury determined relative to damages owing from the Albrechts to the plaintiff, the agreement would limit the effect of the verdict. Again one could argue that damages were conditionally at issue, but the primary safeguard insuring the integrity of the fact-finding process, the adversaries' vigilance, is diminished in effectiveness. Perhaps the trial judge best summarized the policy when he said, "As long as we're running an antagonistic system for solving our disputes, we can't operate with an understanding making the system unantagonistic."

Finally, the failure to disclose the existence of the agreement denied to defendant Galetti any opportunity to cross-examine witnesses as to possible bias arising as a result of the agreement. In their brief before this court the Albrechts state that they "had the right to present their case as they saw fit, and Galetti cannot complain simply because they chose to stress liability rather than damages." We do not quarrel with the contention that trial tactics do not ordinarily present the basis for a new trial. However, if the motive for the tactical decision stems from a *sub rosa* agreement, then all parties must be apprised of the understanding to allow them to evaluate the understanding's effect on the credibility of witnesses.

After careful consideration of the record and briefs of counsel, and for the reasons above stated, it is our opinion that the order granting defendant Albrecht a new trial on his cross-complaint must be reversed and the order granting a new trial on plaintiff's complaint is affirmed.

Reversed in part, affirmed in part, and remanded for new trial.

ALLOY, P. J., and STOUDER, J., concur.