2023 IL App (1st) 220961-U

No. 1-22-0961

Order filed April 7, 2023

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| KRYSTAL DECKER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| NHIAGER THAO; EDWARD ROMAN; and MARIA GUADALUPE ASCENCIO-BARAJAS, | ) | No. 18 L 6190 |
| | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Bridget J. Hughes, |
| (Nhiager Thao, Defendant-Appellee). | ) | Judge presiding. |

JUSTICE NAVARRO delivered the judgment of the court.
Justices Mitchell and Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: In this negligence action, although we affirm the circuit's court ruling that granted defendant-appellee leave to file a motion for summary judgment, we reverse the court's ruling that granted him summary judgment where there was a genuine issue of material fact on the issue of proximate causation.

¶ 2    During a windy, rainy and foggy morning, Nhiager Thao's vehicle spun out on southbound

Interstate 90 and came to rest predominantly in the far left lane of the highway. Krystal Decker

was driving in the far left lane of the highway, but could not change lanes because of a truck, so she stopped her vehicle in front of Thao's vehicle. Upon seeing Thao visibly injured, Decker remained on the scene and called 911. While there, vehicles driven by Edward Roman and Maria Guadalupe Ascencio-Barajas rear-ended Decker. Decker suffered various injuries as a result of those collisions, including to her left knee. Decker sued Thao, Roman and Ascencio-Barajas for negligence. After the latter two defendants settled with Decker, Thao sought leave to file a motion for summary judgment. The circuit court granted Thao leave, and he filed a motion for summary judgment, arguing that Decker could not establish that he was a proximate cause of her injuries. The court agreed with Thao and granted his motion.

¶ 3    On appeal, Decker contends that the circuit court erred in granting Thao leave to file a motion for summary judgment and erred in granting Thao's motion for summary judgment. As to the latter contention, Decker posits that Thao's conduct that resulted in his vehicle becoming disabled on the highway was a proximate cause of her injuries and the court erred in determining the issue of proximate cause as a matter of law. For the reasons that follow, although the circuit court properly granted Thao leave to file a motion for summary judgment, we reverse the court's grant of summary judgment in his favor and remand the matter for further proceedings.

¶ 4                                   I. BACKGROUND

¶ 5    The following recitation of events is taken from the depositions of Thao, Decker and Roman. At somewhere between 4 and 5 a.m. on April 27, 2017, Thao was driving a cargo van southbound on Interstate 90 to pick up groceries for his sons' business. At the time, traffic was fairly light, but it was raining heavily, very windy, dark and there was a light fog. A little less than a mile away from Division Street in Chicago, Thao moved from the right lane of the highway into the middle lane. At around Division Street, Thao's vehicle "hydroplaned," and he suddenly lost

control of it. His vehicle veered into the far right concrete barrier, and the force of the impact caused his vehicle to drift back and hit the left concrete median. Ultimately, Thao's vehicle came to rest predominantly in the far left lane, but straddled over a little into the middle lane. He was angled toward the median and facing oncoming traffic. Thao did not see the water that had pooled on the highway that he believed caused his vehicle to hydroplane and spin out. Thao was worried that his vehicle would explode, so he exited and walked toward the back of his vehicle.

¶ 6     Krystal Decker, an emergency medical technician, was on her way to work that morning in the far left lane of Interstate 90 when she observed Thao's vehicle disabled on the highway. Decker did not observe any headlights on Thao's vehicle due to the damage to its front. Upon approaching Thao's vehicle, Decker reduced her speed and stopped in the far left lane about five feet in front of Thao's vehicle. Decker believed there was a narrow shoulder, about the size of half a car or smaller, to the left of the far left lane. Although Decker contemplated changing lanes to the right, "[i]t wasn't safe to do so" because there was a truck in the adjacent lane. She put her hazard lights on, parked the vehicle and then looked to see if anyone was in the disabled vehicle. After not seeing anyone in the vehicle, she observed Thao emerge from the side of his vehicle hunched over appearing to be injured. Decker unbuckled her seat belt because, according to her, "by law," she had "a duty" to help Thao and rolled down her window. She asked Thao if he was hurt and if he had called 911. Thao told her that he was having some pain on the left side of his body. While speaking to Thao, Decker noticed that the vehicles behind them were not slowing down, and then she called 911. Around this time, Thao also decided he should call 911, so he went back to his vehicle to retrieve his cell phone. After Decker called 911, she was able to speak with a trooper from the Illinois State Police.

¶ 7    Edward Roman was driving on Interstate 90 that morning about 40-45 miles per hour in the far left lane when he observed both Thao and Decker's vehicles in front of him. From his vantage point, he thought that they had been involved in an accident and observed Decker's hazard lights on. As Roman approached their vehicles, he tried to change lanes, but there was another vehicle in the adjacent lane so Roman applied his brakes and tried to pull close to the narrow shoulder on the left side of the highway to avoid hitting Decker. As Roman neared Decker's vehicle, he observed Thao outside of his vehicle, which caused Roman to honk his horn.

¶ 8    While Decker was on the phone with the Illinois State Police trooper, she heard tires screeching and felt Roman's vehicle rear-end her, which caused her knee to slam into the dashboard. Decker believed it was only "[s]econds" from the time she stopped on the highway until Roman hit her. Roman exited his vehicle to make sure Decker was unharmed, and she responded that she was not seriously hurt. Roman also observed Thao outside of his vehicle and told him it was dangerous to be standing on the highway, so they needed to jump on top of the concrete median. Thao and Roman did so, and according to Roman, they jumped onto the median approximately two minutes after he rear-ended Decker. Not more than five minutes later, according to Roman, Ascencio-Barajas rear-ended Decker's vehicle. Decker, however, believed that Ascencio-Barajas hit her mere "[s]econds" after Roman did, though she was unsure whether it was 3 seconds or 60 seconds. The second collision caused Decker's knee to again slam into the dashboard. Despite being rear-ended twice, Decker's vehicle never made contact with Thao's vehicle. Decker stayed in her vehicle the entire time because she believed it was the safest place to be. Following the collisions, the police and paramedics arrived. An ambulance took Thao and Decker together to the hospital. Thao received a citation for driving "too fast," but during his

deposition, he asserted that a traffic court dismissed the citation. As a result of the collisions, Decker received multiple injuries, including an injury to her left knee, which required surgery.

¶ 9　A little more than a year after the accidents, Decker sued Thao, Roman and Ascencio-Barajas, bringing one count of negligence against each of them. Only the count directed at Thao is relevant for this appeal. In that count, Decker alleged that Thao had a duty to maintain, operate and control his vehicle in a manner to not cause injuries to others lawfully traveling along the highway. Decker claimed that Thao breached this duty by driving too fast based on the conditions, driving without brakes adequate to control his vehicle's movement, unnecessary hindering and obstructing her by blocking traffic, and improperly failing to change lanes in a reasonable and safe manner, all in violation of various provisions of the Illinois Vehicle Code (Code). See 625 ILCS 5/11-601; 11-709; 11-1416; 12-301 (West 2016). Decker asserted that, as a direct and proximate result of these violations, Thao's "vehicle struck the front of [her] vehicle" and caused her injuries.[1]

¶ 10　Thao filed an answer to Decker's complaint, denying all material allegations and that his conduct proximately caused her injuries. Additionally, Thao raised multiple affirmative defenses, including that Decker was comparatively negligent. Decker, in turn, denied each and every allegation contained in Thao's affirmative defenses. Roman and Ascencio-Barajas filed their own answers and affirmative defenses. Additionally, all three defendants filed counterclaims for contribution against each other. Discovery ensued.

¶ 11　In September 2019, the circuit court set the case for trial to begin the following year, but due to the COVID-19 pandemic, the trial date was abandoned. On December 16, 2020, the circuit

---

[1] Despite Decker asserting that Thao's vehicle struck her vehicle, the deposition testimony demonstrated uncontrovertibly that Thao's vehicle never made contact with Decker's vehicle.

court ordered all fact discovery closed, and on July 21, 2021, the court certified the case for trial. In the court's trial certification order, it stated that "[n]o dispositive motions are pending and none will be filed by any party prior to trial." Two months later, the court set the case for trial on December 13, 2021.

¶ 12    Four days before the scheduled trial, Roman and Ascencio-Barajas, individually, filed motions for findings of good-faith settlements with Decker, and they requested their dismissal from the litigation. The next day, Decker filed an emergency motion for a continuance of the trial date because she had just given birth. The circuit court granted Decker's emergency motion, struck the trial date of December 13, 2021, and rescheduled the trial for May 12, 2022.

¶ 13    On January 11, 2022, the circuit court found that Roman and Ascencio-Barajas had each reached a good-faith settlement with Decker and dismissed them from the case. In addition, the court struck all counterclaims for contribution against Roman and Ascencio-Barajas. As a result of the dismissal orders, only Thao remained as a defendant.

¶ 14    The following day, Thao sought leave to file a motion for summary judgment. His motion contained a single sentence that simply requested leave without further explanation. Decker opposed Thao's request, highlighting the circuit court's trial certification order where it stated that no dispositive motions would be filed by any party before trial. According to Decker, Thao "waived" his request for leave to file a motion for summary judgment by virtue of the trial certification order. Thao filed a reply in support of his motion for leave and observed that, since the court's trial certification order, the other two defendants in the litigation had been dismissed. Thao argued that their dismissal "materially altered the posture of the case." In an e-mail to the parties, the court allowed the motion without providing an explanation and ordered the parties to provide a briefing schedule and hearing date, which the court subsequently signed.

¶ 15    Thereafter, Thao filed his motion for summary judgment, observing that, based on the undisputed facts, Decker's vehicle never made contact with his vehicle and that Decker was rear-ended by Roman and Ascencio-Barajas. Thao argued that Decker only could show that he created the condition that made her injuries possible, but she could not establish that his actions proximately caused her injuries. Thao concluded that, because an essential element of her negligence action against him was unprovable, he was entitled to summary judgment. In response, Decker contended that it was reasonably foreseeable that Roman and Ascencio-Barajas would rear-end her given Thao's conduct, which led to his vehicle completely blocking the far left lane of the highway. Decker highlighted that proximate cause was generally a question of fact for the jury to resolve and asserted that Thao's motion should be denied.

¶ 16    In April 2022, the circuit court entered an order on Thao's motion. The court found that Thao could not have reasonably foreseen that Decker, upon observing his disabled vehicle, would have pulled over, parked her vehicle, communicated with him and called 911, in particular due to the adverse weather conditions and traffic. Because Decker's act of pulling over to render aid on the highway was not something that Thao could have reasonably foreseen, her injuries were "unforeseeable." The court concluded that Decker could not establish proximate cause and granted Thao's motion for summary judgment.

¶ 17    Decker moved the circuit court to reconsider and claimed that it "misconstrued" the facts of the accident and therefore "arrived at an erroneous conclusion after applying the applicable law to those facts." Decker asserted that the court based its ruling on the mistaken belief that she stopped her vehicle to render aid whereas she posited that the facts showed she stopped her vehicle because Thao's disabled vehicle was blocking her lane of travel. To support her argument, Decker cited both her and Thao's deposition testimony. Additionally, she cited the deposition testimony

of Illinois State Police Trooper Michael Leathers, who responded to the scene of the accident, as well as the crash report he created after the accident and discussed during his deposition. Neither Trooper Leathers' deposition nor his crash report had previously been included as exhibits during briefing on Thao's motion for summary judgment. Decker argued that, based on the court's misapprehension of why she pulled over, its foreseeability analysis was compromised. Decker maintained that Thao's conduct in losing control of his vehicle on a crowded highway was a proximate cause of her injuries. In a written order, the circuit court denied Decker's motion to reconsider without explanation.

¶ 18    Decker timely appealed.

¶ 19                                    II. ANALYSIS

¶ 20                    A. Motion for Leave to File Summary Judgment Motion

¶ 21    Decker first contends that the circuit court erred in granting Thao leave to file a motion for summary judgment. Specifically, Decker argues that the court's grant of leave violated both Cook County Circuit Court Rule 2.1(f) (Aug. 21, 2000) as well as its own trial certification order.

¶ 22    Initially, we note that when opposing Thao's motion for leave to file a motion for summary judgment in the circuit court, Decker did not argue about Rule 2.1(f), let alone even cite it once. Because of this failure, we could find that she has forfeited challenging the circuit court's decision based on Rule 2.1(f) on appeal. See *Spirit of Excellence, Ltd. v. Intercargo Insurance Co.*, 334 Ill. App. 3d 136, 153 (2002) (finding the appellant's argument that the circuit court violated Cook County Circuit Court Rule 2.1(f) "waive[d]" because the appellant "raise[d] this contention for the first time on appeal").

¶ 23    Forfeiture aside, Rule 2.1(f) provides that:

"All motions for summary shall be filed and duly noticed for hearing such that the motion comes before the court for initial presentation and entry of a briefing schedule not later than forty-five (45) days before the trial date, except by prior leave of court and for good cause shown or unless a deadline for dispositive motions is otherwise specified in the case management order." Cook County Cir. Ct. R. 2.1(f) (Aug. 21, 2000).

In the instant case, the circuit court originally scheduled a trial for December 13, 2021. However, just before the scheduled trial date, Decker filed an emergency motion for a continuance because she had just given birth. The court granted her the continuance and re-scheduled the trial for May 12, 2022. On January 12, 2022, well over 100 days before the new trial date, Thao sought leave to file a motion for summary judgment. The court granted his request and allowed Thao to file the motion, which he did on January 19, 2022, still well over 100 days before the re-scheduled trial date. The court further signed the parties' proposed briefing schedule on January 24, 2022, also well over 100 days before the re-scheduled trial date. Because Thao's motion for leave allowed his actual motion for summary judgment to come before the court for initial presentation and entry of a briefing schedule 45 days or more before the scheduled trial date, Thao's motion for leave and the court's grant of that motion complied with Rule 2.1(f).

¶ 24    Despite this timeline complying with the plain language of Rule 2.1(f), Decker claims that the time period Rule 2.1(f) must be measured by ended on December 13, 2021, the initial scheduled trial date. However, she cites no case law supporting this proposition. See Ill. S. Ct. 341(h)(7) (eff. Oct. 1, 2020) (providing that the appellant must support her contentions of error "with citation of the authorities"); *Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 5 (asserting "[a]rguments that are not supported by citations to authority fail to meet the requirements of

- 9 -

Supreme Court Rule 341(h)(7) and are procedurally defaulted"). Decker does cite *Deaton v. Lloyd's Jewelry Co.*, 7 Ill. App. 3d 926 (1972) to support her general contention that the circuit court erred in granting Thao leave to file a motion for summary judgment based on a purported violation of a local circuit rule. In *Deaton*, the court denied a plaintiff's motion for summary judgment, where the plaintiff failed to provide any notice to the defendants of the motion in violation of a local court rule, which thereby deprived the defendants of an opportunity to respond to the motion. *Id.* at 928-29. Given this failure, this court asserted that "[t]he party who moves for summary judgment must comply with the statutes or court rules relating thereto, and a failure to follow the prescribed procedure will preclude the granting of the motion." *Id.* at 929. In contrast to *Deaton*, Thao did not violate Rule 2.1(f), and therefore, the decision is inapposite.

¶ 25    Concerning the circuit court's prior trial certification order, it stated that "[n]o dispositive motions *** will be filed by any party prior to trial." The court has wide and inherent discretion in controlling its own docket. *In re Marriage of Faber*, 2016 IL App (2d) 131083, ¶ 13. And Decker has directed us to no authority establishing that the court cannot control its own docket by amending its own interlocutory order. In fact, the opposite is true. Our supreme "court has repeatedly recognized the inherent power of the circuit court to review, modify, or vacate interlocutory orders while the court retains jurisdiction over the entire controversy." *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 28 (citing cases). Thus, the court did not err by granting Thao leave to file a motion for summary judgment despite the trial certification order.

¶ 26    In sum, the circuit court did not violate Cook County Circuit Court Rule 2.1(f) (Aug. 21, 2000) and did not violate its prior trial certification order by allowing Thao leave to file a motion for summary judgment.

¶ 27                              B. Motion for Summary Judgment

¶ 28    Decker next contends that the circuit court erred in granting Thao summary judgment where his conduct that resulted in his vehicle becoming disabled on the highway was a proximate cause of her injuries. As such, Decker argues that the court erred by determining the issue of proximate cause as a matter of law.

¶ 29    The grant of summary judgment is proper where the pleadings, depositions, admissions on file and affidavits demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25. When determining whether there is a genuine issue of material fact, the court strictly construes the supporting material against the moving party and liberally in favor of the nonmoving party. *Carney*, 2016 IL 118984, ¶ 25. A genuine issue of material fact "exists where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. If the plaintiff fails to establish any element of her negligence action, the defendant is entitled to summary judgment. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). "Although summary judgment can aid in the expeditious disposition of a lawsuit, it remains a drastic means of disposing of litigation and, therefore, should be allowed only where the right of the moving party is clear and free from doubt." *Id.* We review the circuit court's grant of summary judgment *de novo* (*Carney*, 2016 IL 118984, ¶ 25), meaning we do not defer to the court's judgment or reasoning, and our review is completely independent of it. *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 20.

¶ 30    Initially, we note that, in supporting her contention that the circuit court erred in granting Thao summary judgment, Decker relies on the deposition of Trooper Leathers and the crash report he created after the accident and discussed during that deposition. However, neither Trooper

Leathers' deposition nor the crash report were part of the record considered by the court when ruling on Thao's motion for summary judgment. In Thao's motion, he attached his and Decker's deposition. In Decker's response, she attached her, Thao and Roman's depositions. While one of the exhibits introduced in Decker's deposition was Trooper Leather's crash report, the report itself was not included as an exhibit in Thao's motion, in Decker response or in Thao's reply. In fact, the first time Trooper Leathers' deposition or his crash report were included in the record was when Decker filed her motion to reconsider.

¶ 31    As Decker's contention on appeal is that the circuit court erred in granting Thao's motion for summary judgment, we must confine our review to the record as it existed when the court ruled on Thao's motion. See *Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 42 (finding where a plaintiff "submitted an affidavit *** for the first time in its motion to reconsider [the circuit court's grant of summary judgment in favor of the defendants]," the reviewing court could not "consider this document because the scope of appellate review of a summary judgment motion is limited to the record as it existed when the circuit court ruled on the summary judgment motion"); *McCullough v. Gallaher & Speck*, 254 Ill. App. 3d 941, 947 (1993) (observing that "[t]he scope of appellate review of a summary judgment motion is limited to the record as it existed at the time the trial court ruled" and finding the "court is not required to consider documents attached to a plaintiff's motion for reconsideration of a summary judgment ruling where the plaintiff had failed to file the documents in his response to the defendant's motion for summary judgment").

¶ 32    While evidence that was not included in the summary judgment process can be considered during a motion to reconsider when it is newly discovered (see *Greenhill v. REIT Management & Research, LLC*, 2019 IL App (1st) 181164, ¶ 78), Trooper Leathers' deposition and his crash report

were not newly discovered because they both were available during the initial summary judgment process. See *id.* (newly discovered evidence for purposes of a motion to reconsider a summary judgment ruling is evidence that was "not available at the time of the hearing" of the initial summary judgment motion). Consequently, we will not consider Trooper Leathers' deposition or the crash report he authored on appeal, as those were not part of the evidence considered by the circuit court when ruling on Thao's motion for summary judgment.

¶ 33 With that preliminary evidentiary issue addressed, we turn to Decker's cause of action against Thao, which was for negligence. In such an action, Decker had to ultimately prove that Thao owed her a duty of care, he breached that duty of care and his breach proximately caused her injuries. *Monson v. City of Danville*, 2018 IL 122486, ¶ 23. Only the latter element is at issue in this appeal. "Proximate cause is defined as a cause that, in the ordinary course of events produced the plaintiff's injury." *Atchley v. University of Chicago Medical Center*, 2016 IL App (1st) 152481, ¶ 45. Generally, whether proximate cause exists is a question of fact for the trier of fact to resolve. *Young v. Bryco Arms*, 213 Ill. 2d 433, 447 (2004). However, the court can determine that there is a lack of proximate cause as a matter of law (*id.*) when the material facts are undisputed and reasonable minds could not differ in the inferences to be drawn from those facts. *Hooper v. County of Cook*, 366 Ill. App. 3d 1, 11 (2006) (citing *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300, 318 (1942)). There may be more than one proximate cause of an injury, and a cause need not be the "last or nearest cause; it is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes injury." *Leone v. City of Chicago*, 235 Ill. App. 3d 595, 603 (1992). There are two distinct components of proximate cause: cause in fact and legal cause. *Steed v. Rezin Orthopedics & Sports Medicine*, 2021 IL 125150, ¶ 37.

¶ 34                                      1. Cause in Fact

¶ 35   Cause in fact considers the reasonable certainty that the defendant's conduct caused the plaintiff's injury. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992). When the defendant's conduct does not directly result in the plaintiff's injury, but rather it is the subsequent, independent act of a third party, we use the substantial factor test to determine if there is cause in fact. *Kramer v. Szczepaniak*, 2018 IL App (1st) 171411, ¶ 27. Under the substantial factor test, the defendant's conduct will be considered a cause in fact if it "was a material element and a substantial factor in bringing about the injury." *Young*, 213 Ill. 2d at 446. The defendant's conduct is a material element and substantial factor in bringing about an injury "if, absent that conduct, the injury would not have occurred." *Abrams v. City of Chicago*, 211 Ill. 2d 251, 258 (2004).

¶ 36   When a case involves the possibility of concurrent negligence of multiple defendants, our supreme court has instructed us to differentiate between a condition that merely made an injury possible and the cause of the injury. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257 (1999). Under this dichotomy, "if the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury." *Id.* When distinguishing between the two, we employ the same analysis used to determine if there is cause in fact. See *Kramer*, 2018 IL App (1st) 171411, ¶ 31 ("We can style the [cause-condition] analysis by any name; it's the same cause-in-fact analysis.").

¶ 37   Illustrative in distinguishing the cause-condition dichotomy, and thus, whether cause in fact exists, is *Galman*. In the case, a truck driver parked his tanker truck illegally on the street about 40 feet away from the intersection of another street. *Galman*, 188 Ill. 2d at 254. A student leaving a nearby high school crossed in the middle of the street in front of the truck rather than at the marked crosswalk. *Id.* While doing so, the student was hit and killed by another vehicle whose

view of the student was blocked by the presence of the truck. *Id.* at 255. In addition to suing the driver of the vehicle, the student's estate sued the driver of the tanker truck and his company asserting that their negligence in parking the truck illegally proximately caused the student's injuries. *Id.* 255-56. The truck driver and his company contended that his parking of the truck was not a proximate cause of the student's injuries, but merely provided a condition making her injuries possible. *Id.* at 257. Instead, according to them, the student's negligence in jaywalking and the negligence of the driver that hit her were intervening and superseding causes of her injuries. *Id.* At trial, a jury found all of the parties partially at fault. *Id.* at 255; *First Springfield Bank & Trust v. Galman*, 299 Ill. App. 3d 751, 756 (1998). The truck driver and his company sought a judgment notwithstanding the verdict claiming a lack of proximate cause, but the trial court denied their motion. *Galman*, 188 Ill. 2d at 255; *Galman*, 299 Ill. App. 3d 758.

¶ 38 The case reached our supreme court, where proximate cause was at issue. *Galman*, 188 Ill. 2d at 256-57. At the outset, the court highlighted the distinction between a cause and condition and observed that this dichotomy was simply another method of presenting a cause-in-fact analysis. *Id.* at 259. The court proceeded to discuss whether there was cause in fact and found that, "had [the driver of the tanker truck] not parked his truck illegally ***, [the student's] injuries almost certainly would not have occurred." *Id.* at 260. Though the student might still have crossed the street in the middle of the block, "she would have had an unobstructed view of the roadway and presumably would have timed her crossing to avoid a collision." *Id.* As such, the court concluded that cause in fact existed. *Id.*

¶ 39 Turning to the instant case, we first must determine if Thao's conduct was a cause in fact of Decker's injuries. Thao hydroplaned on water pooling on the highway, spun out and careened to the far right concrete barrier and then back to the left concrete median. Thao's vehicle came to

rest mostly in the far left lane of the highway and facing oncoming traffic while angled toward the concrete median. Soon after, Decker observed Thao's disabled vehicle and stopped behind him. Although she attempted to switch lanes before stopping, she could not do so because of a truck in the adjacent lane. After parking, communicating with Thao and calling 911, Decker was rear-ended twice. Under these uncontroverted facts, absent Thao's conduct of hydroplaning and coming to rest in the far left lane of the highway, Decker's injuries would almost certainly not have occurred. See *id.* at 260 (finding that, "had [the driver of the tanker truck] not parked his truck illegally ***, [the student's] injuries almost certainly would not have occurred"). Indeed, the uncontroverted evidence from Decker's deposition showed that the reason her vehicle initially stopped behind Thao's vehicle was because his vehicle was blocking the lane and Decker could not safely change lanes due to other traffic on the highway. In other words, had Thao not hydroplaned, which resulted in his vehicle ping ponging across the highway and becoming disabled in the far left lane, Decker would have had no reason to stop on the highway. See *Inman v. Howe Freightways, Inc.*, 2019 IL App (1st) 172459, ¶ 67 (concluding that cause in fact existed because had a truck driver and his company's conduct not forced the truck to the shoulder of the highway, another truck driver would not have been in a position to cause a chain-reaction collision involving the parked truck and two tow trucks). Therefore, reasonable minds could differ about whether Thao's conduct was a material and substantial factor in bringing about Decker's injuries. See *Young*, 213 Ill. 2d at 446.

¶ 40 Nevertheless, Thao maintains that his conduct did nothing more than provide a passive condition through which Decker's injuries were made possible by the active causal agents, *i.e.*, Roman and Ascencio-Barajas. To this end, Thao posits that he was merely a condition that made her injuries possible and not the cause of those injuries. However, "this distinction only carries

weight 'where the forces set in operation by the defendant have come to rest in a position of apparent safety, and some new force intervenes.' " *Inman*, 2019 IL App (1st) 172459, ¶ 76 (quoting *Shank v. Fields*, 373 Ill. App. 3d 290, 294 (2007)); see also *Kramer*, 2018 IL App (1st) 171411, ¶¶ 67-68 (observing that cases finding "the intervening act of negligent driving did *not* absolve the original tortfeasor of liability" occurred when "the effects of the negligence of the first actor had not come to rest in a position of safety") (emphasis in original.) Thao's conduct never resulted in his vehicle coming to a position of apparent safety. Rather, his conduct resulted in his vehicle coming to rest in a position of danger where his vehicle was disabled in a traffic lane of a highway during adverse weather conditions. See *Inman*, 2019 IL App (1st) 172459, ¶ 76 (finding the defendants' "conduct never resulted in [their] tractor trailer coming to a position of apparent safety" where the tractor trailer became disabled on the shoulder of a busy interstate, which was "a position of danger"). As reasonable minds could differ about whether Thao's conduct was a material and substantial factor in bringing about Decker's injuries, a genuine issue of material fact exists as to whether Thao's conduct was a cause in fact of Decker's injuries.

¶ 41                                      2. Legal Cause

¶ 42     Having concluded that a genuine issue of material fact exists as to whether Thao's conduct was a cause in fact of Decker's injuries, we now turn to the second component of a proximate cause analysis and whether legal cause exists. Even if a genuine issue of material fact exists as to cause in fact, if legal cause does not exist as a matter of law, then proximate cause is lacking. See *Young*, 213 Ill. 2d at 447. Legal cause involves the question of whether the plaintiff's injury was foreseeable. *Steed*, 2021 IL 125150, ¶ 37. In other words, the question is whether the defendant's conduct was " 'so closely tied to the plaintiff's injury that he should be held legally responsible for it.' " *Simmons v. Garces*, 198 Ill. 2d 541, 558 (2002) (quoting *McCraw v. Cegielski*, 287 Ill.

App. 3d 871, 873 (1996)). Reasonable foreseeability is not a subjective test, but rather an objective one. *Stanphill v. Ortberg*, 2018 IL 122974, ¶ 34. If the plaintiff's injury was the kind that a reasonable person would view "as a likely result" of the defendant's conduct, then liability is justified. (Internal quotation marks omitted.) *Lee*, 152 Ill. 2d at 456. Conversely, if the injury was "highly extraordinary," then imposing liability is not justified. (Internal quotation marks omitted.) *Id.* Legal cause embodies a question of policy, and "[h]ow far should a defendant's legal responsibility extend for conduct that did, in fact, cause the harm?" *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 395 (2004).

¶ 43    Turning to the instant case, the legal cause inquiry focuses on whether Decker's injuries from being rear-ended were the kind of injuries that a reasonable person would view as a likely result of Thao's conduct by which his vehicle ended up disabled in the far left lane of the highway. In essence, this inquiry has two components: first, whether Decker's actions were foreseeable, and second, whether her being rear-ended was foreseeable. We begin with the first part. The uncontroverted evidence established that Decker did not observe Thao's vehicle hydroplane and careen across the highway. She only observed Thao's damaged and disabled vehicle rendered stationary in the far left lane of southbound Interstate 90. Once Decker approached his vehicle, she initially stopped about five feet in front of his vehicle because she could not change lanes due a truck in the adjacent lane. However, once she stopped, she did so in the far left lane of the highway because the shoulder to the left was too narrow to completely fit a car. From there, she put her hazard lights on, parked and looked to see if anyone was inside of the vehicle. After observing no one, she noticed Thao emerge from the side of his vehicle appearing to be injured. After witnessing a visibly injured Thao, Decker chose to remain at the scene and call 911. Although no one has explicitly raised the rescue doctrine, we find the doctrine helpful in our analysis, even though

- 18 -

neither party has made it an issue. "The rescue doctrine arises when a plaintiff brings a negligence action against a defendant whose negligence has placed a third party *or himself or herself* in a position of peril." (Emphasis in original.) *Reed v. Ault*, 2012 IL App (2d) 110744, ¶ 42. Underpinning the doctrine is the view that " 'it is always foreseeable that someone may attempt to rescue a person who has been placed in a dangerous position.' " *Suchy v. City of Geneva*, 2014 IL App (2d) 130367, ¶ 34 (quoting *Williams v. Foster*, 281 Ill. App. 3d 203, 207 (1996)); see also *Espinoza v. Schulenburg*, 129 P.3d 937, 938-39 (Ariz. 2006) (where an off-duty firefighter and emergency medical technician went to render aid to a family whose vehicle had been involved in an accident, resulting in the vehicle partially obstructing a lane of traffic on the highway, and ended up injured when the vehicle was rear-ended, the Arizona Supreme Court observed that "rescue is a normal, if not always predictable, response to danger" and "[t]he law should encourage people to respond to those in distress"); *Zwinge v. Hettinger*, 530 So. 2d 318, 319, 323 (Fla. Ct. App. 1988) (where a driver on a Florida highway was rear-ended and injured while pulling over to the shoulder to render aid to vehicles involved in an accident, the Florida Appellate Court commenting on the issue of proximate cause observed that the rescuer "was stopping to render assistance at the time he was rear-ended" and "[s]uch a rescue effort cannot be said to have been so far beyond the realm of foreseeability as to preclude liability by the [driver who caused the first accident] for [the rescuer's] injuries as a matter of law").

¶ 44    Although *Espinoza* and *Zwinge*, as decisions from foreign jurisdictions, are merely persuasive authority (see *K & K Iron Works, Inc. v. Marc Realty, LLC*, 2014 IL App (1st) 133688, ¶ 47), consistent with the rationale for the rescue doctrine in Illinois, they demonstrate that, when someone has been placed in a position of danger like in a disabled vehicle on the highway, reasonable minds could find it likely that someone might attempt to render aid to that person.

Given this, and construing the evidence strictly against Thao and liberally in favor of Decker, reasonable minds could differ as to whether Decker's decision to remain on the scene and render aid to Thao was a foreseeable result of Thao's conduct that led to his vehicle becoming disabled on the moving lane of the highway.

¶ 45     The second part of our foreseeability analysis concerns the likelihood that Decker's vehicle would be hit and she would suffer injuries while she was stopped on the highway in the process of rendering aid. The Code is replete with laws demonstrating the dangers of a vehicle being stationary on the highway. For instance, section 11-907.5(a) of the Code (625 ILCS 5/11-907.5(a) (West 2016)) mandates that, when a vehicle approaches a disabled vehicle with its hazard lights illuminated on a four-lane highway, the driver must:

> "(1) proceed[ ] with due caution, yield the right-of-way by making a lane change into a lane not adjacent to that of the disabled vehicle, if possible with due regard to safety and traffic conditions; or (2) if changing lanes would be impossible or unsafe proceeding with due caution, reduce the speed of the vehicle, maintaining a safe speed for road conditions and leaving a safe distance until safely past the stationary vehicles."

Section 11-907(c) of the Code (625 ILCS 5/11-907(c) (West 2016)) provides similar requirements when driving by stationary emergency vehicles on the highway. Such statutes are clear indications that being stationary on a highway can be dangerous. Indeed, highway accidents and consequent injuries are such a problem that Illinois recently created a "Move Over Early Warning Task Force *** to study the issues of violations" of section 11-907 and section 11-907.5 of the Code. See Pub. Act 102-336, § 5, (eff. Jan. 1, 2022) (adding 625 ILCS 5/11-907.2). While the location of where Thao's vehicle came to rest posed a potentially dangerous situation ripe for an accident and

resulting injuries to occur, the weather conditions that morning possibly exacerbated the situation. See *Kramer*, 2018 IL App (1st) 171411, ¶ 47 (noting that what is reasonably foreseeable is a context-dependent inquiry). It was dark outside, there was heavy rain, a light fog and it was windy. See *Inman*, 2019 IL App (1st) 172459, ¶ 71 (finding a truck being stationary on the highway "was an extremely dangerous scenario" given adverse weather conditions).

¶ 46    For example, in *Hook v. Heim*, 54 Ill. App. 3d 368, 369 (1977), a pick-up truck and another vehicle driving the opposite way on a highway collided, resulting in the pick-up truck ending up in a ditch and the other vehicle ending up in the center of the highway. Multiple people from a nearby restaurant, including the plaintiff, rushed to the scene to aid the occupants of the vehicles. *Id.* Approximately five minutes after the accident, while the plaintiff was attempting to help the driver of the vehicle on the highway, a third vehicle hit that vehicle and injured the plaintiff. *Id.* By the time the case reached a jury, the only defendant remaining was the driver of the pick-up truck, and the jury found him liable for the plaintiff's injuries. *Id.*

¶ 47    On appeal, the driver of the pick-up truck contended that the trial court erred in denying his motions for a directed verdict and for a judgment notwithstanding the verdict. *Id.* at 369-370. While he conceded his conduct was a cause in fact of the plaintiff's injury, he argued that the negligence of the third driver was an intervening force, which as a matter of law, relieved him of legal responsibility for the plaintiff's injury. *Id.* at 370. In finding that the negligence of the third driver could not be characterized as unforeseeable as a matter of law, the court observed that the collision involving the third driver and the plaintiff occurred at nighttime only approximately five minutes after the initial accident, and there was "nothing freakish or fantastic in the sequence of events which led to [the plaintiff's] injury." *Id.* 370-71. According to this court, "a jury could find that the events were concatenated by circumstances that were not unusual or extraordinary and that

[the plaintiff's] injury was a natural and probable result of [the pick-up driver's] negligent actions." *Id.* at 371. Consequently, this court affirmed the trial court's rulings. *Id.*

¶ 48 Here, too, construing the evidence strictly against Thao and liberally in favor of Decker, reasonable minds could differ as to whether once Decker's vehicle parked behind Thao's vehicle on a moving lane of the highway, the subsequent collisions by Edward and Ascencio-Barajas and resultant injuries to Decker were foreseeable given Thao's conduct that resulted in his vehicle coming to rest in a moving lane of the highway during adverse weather conditions. See *Inman*, 2019 IL App (1st) 172459, ¶¶ 71, 82 (finding the trial court properly denied a defendant's motion for a judgment notwithstanding the verdict where the evidence adduced at trial supported the jury's conclusion that legal cause existed because "the combination of the location of [the] vehicle and the conditions during the evening of the accident" created "circumstances [ ] ripe for an accident to occur"). Moreover, only minutes, possibly seconds, passed between Decker stopping and rendering aid to Thao and her vehicle being rear-ended by Roman. See *Knoblauch v. DEF Express Corp.*, 86 F.3d 684, 689 (7th Cir. 1996) (applying Illinois law and noting the importance of the lapse of time in a proximate cause analysis involving a multi-vehicle accident).

¶ 49 As we have concluded, reasonable minds could differ about whether Thao's conduct was a material and substantial factor in bringing about Decker's injuries, and reasonable minds could differ as to whether Decker's injuries were the kind that a reasonable person would view as a likely result of Thao's conduct. Therefore, a genuine issue of material fact exists as to whether Thao's conduct was a cause in fact and a legal cause of Decker's injuries. As is generally the case, the issue of proximate causation in this case should have been determined by the trier of fact. See *Galman*, 188 Ill. 2d at 257. Our conclusion is limited and has nothing to do with the duty allegedly owed to Decker by Thao, whether Thao breached that duty by virtue of his conduct or if Decker

was comparatively negligent, as Thao raised such an affirmative defense. Our conclusion is purely that the evidence set forth in the summary judgment process has raised a genuine issue of material fact as to whether Thao's conduct proximately caused Decker's injuries. Accordingly, the circuit court erred in determining the issue of proximate cause as a matter of law.

¶ 50                                    III. CONCLUSION

¶ 51    For the foregoing reasons, although we affirm in part, we reverse the circuit court of Cook County's grant of summary judgment and remand for further proceedings.

¶ 52    Affirmed in part and reversed in part; cause remanded.